## Minnesota Lumber Co. v. The Whitebreast Coal Co.

1.  SET-OFF—*Contracts Void for Uncertainty or for Want of Mutuality.*—An agreement *malum prohibitum*, or which is void for uncertainty or for want of mutuality, can not be pleaded by way of set-off.

2.  *Contracts—A Promise as a Consideration.*—The general rule is that a promise is not a good consideration for a promise unless there is mutuality of agreement.

3.  *Options—What is, etc.*—The privilege of ordering any quantity of coal, not in excess of a certain number of tons, is an option to buy coal.

4.  SAME—*Do Not Always Render a Transaction Illegal.*—Although there may be some illegal feature indirectly connected with a transaction involved in a suit, yet the plaintiff may recover if his cause of action is otherwise legitimate, and he can make out his case without calling to his aid the illegal agreement.

**Memorandum.**—Assumpsit. In the Circuit Court of De Kalb County; the Hon. HENRY B. WILLIS, Judge, presiding. The pleadings are contained in the statement of the case; trial by the court without a jury; finding and judgment for the plaintiff; appeal by defendant. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

### STATEMENT OF FACTS.

This is an action of assumpsit by appellee against appellant to recover for coal sold and delivered.

The declaration contains only the common counts. The general issue and two special pleas of set-off were filed. The first special plea set up the following contract:

"Polo, Ill., Aug. 4, 1886.

Memorandum of contract between the Whitebreast Coal Company, by S. G. Russell, agent, and Minnesota Lumber Company: The said Minnesota Lumber Company agrees to buy its requirements of anthracite coal for season of 1886–1887 (upon condition named hereafter), of said Whitebreast Coal Company, which is to furnish the same as ordered (best quality of Scranton coal), at following prices f. o. b. cars at Milwaukee or Chicago, at option of said M. L. Co., to-wit: $4.35 per ton for egg and grate and $4.60 for stove and nut up to November 1st, after which time said prices shall be advanced five cents per ton for the remaining term of this contract. Other sizes at proportionate prices. Payments on shipments to be settled on 15th of each month following shipment in a sixty day acceptance of said M. L. Co. without interest.

In the event of lower prices than the above on standard anthracite coal being offered said M. L. Co., the said Whitebreast Coal Company agrees either to accept such lower prices on balance of coal not shipped or release said M. L. Co. from further liability on this contract.

It is further agreed that the prices last herein made shall apply to orders up to January 1, 1887. It is agreed that this contract shall be binding on both parties provided the said M. L. Co. shall confirm the same by telegraph any time during this or the following day.

(Signed) Whitebreast Coal Co.,

By S. G. Russell, Sales Agent.

Minnesota Lumber Co.,

By Geo. W. Perkins, Sec'y."

The plea then avers that the defendant's requirements of anthracite coal, between the dates of August 5, 1886, and January 1, 1887, were twenty-five thousand tons; that defendant made orders at different times for coal, but that the plaintiff failed and refused to fill them, to the damage

of defendant of $25,000, for which it tendered set-off and prayed judgment.

The second special plea set up the above contract and the following additional one entered into August 21, 1886:

" Whereas, a dispute has arisen between the parties to the within instrument, it being claimed by the Whitebreast Coal Company that the said instrument does not constitute a valid engagement upon their part to furnish coal, which claim is denied by the said Minnesota Lumber Company.

Now, therefore, in order to arrive at an amicable settlement of the dispute pending, it is mutually agreed by the said Whitebreast Coal Company and the Minnesota Lumber Company that the said alleged contract shall be performed upon the following conditions and exceptions: Coal shall be billed and paid for at the rate of $4.45 per ton for egg and grate, and $4.70 for stove and nut and No. 4. As soon as convenient hereafter each of the parties hereto shall choose an arbitrator, they to choose a third, which three arbitrators, upon a hearing of the respective claims of each of the parties, shall decide whether the Minnesota Lumber Company is entitled to its coal at the prices named in the within alleged contract of August 4th. In case of an affirmative decision of this question the Whitebreast Coal Company shall rebate to said Minnesota Lumber Company the difference between said contract prices and the amended prices mentioned herein. In case of a negative decision, the said amended prices shall be in final settlement of the coal. It is agreed that the coal shall be settled for in sixty days paper as before mentioned, and it shall also be decided by said arbitrators whether the paper shall be with or without interest. It is agreed that this arbitration shall be made under the statute of the State of Illinois.

It is agreed that the Whitebreast Coal Company shall pay the Minnesota Lumber Company the difference between the prices fixed by arbitration and the cost price upon all coal ordered by Minnesota Lumber Company between August 4, 1886, and the date hereof. It is also agreed that the

Minnesota Lumber Company shall have the privilege, under this contract, of ordering any quantity of coal not in excess of 12,000 tons, which agreement is in lieu of stipulation for requirements.

This amount of coal ordered between August 4th and date, not to exceed 200 tons. It is distinctly understood and agreed that neither party hereto waives any of the respective rights heretofore claimed.

PoLo, Ill., August 21, 1886.

MINNESOTA LUMBER COMPANY,

By Geo. W. PERKINS, Sec.

WHITEBREAST COAL COMPANY,

By C. K. PITTMAN, Gen. Agt."

The plea then avers that the plaintiff delivered a small portion of the coal provided for and then refused and failed to deliver other coal as ordered in accordance with the contract, to the defendant's damage of $25,000, for which it tendered set-off and prayed judgment.

The Circuit Court sustained a general demurrer to both these pleas. The defendant stood by the pleas, a jury was waived and the cause was tried by the court upon the declaration and general issue. The court found for the plaintiff and rendered judgment for $9,254.36, from which the defendant appealed, and claims that the court erred in sustaining a demurrer to the special pleas of set-off, and also in rendering judgment for the value of the coal shipped and delivered to the defendant.

APPELLANT'S BRIEF, CARNES & DUNTON, ATTORNEYS; JOHN P. WILSON, OF COUNSEL.

When the meaning used in a contract is doubtful, or susceptible of two senses, that is to be adopted which will give effect to the intent, as a legal contract, rather than that which renders it inoperative. Thrall v. Newell, 19 Vt. 202; 47 Am. Dec. 682; Chitty on Contracts, 79, 80.

Where the terms of a contract are susceptible of two significations, we ought to understand it in the sense which is most agreeable to the nature of the contract; and where

a clause is susceptible of two different constructions, it should be taken in that sense which will give it some operation, rather than that which gives it none. Evans v. Saunders, 8 Porter, 497; 33 Am. Dec. 297.

The words "with interest at ten per cent," in a contract, are construed by adding "per annum," to avoid construing the contract usurious. Crittenden et al. v. French, 21 Ill. 598.

As an executory contract may be altogether discharged by mutual agreement, so it may be changed. The undertaking of each party to do something different from that which he first agreed to do furnishes a consideration for the promise of the other. A subsequent agreement to vary the performance of a contract in a way that would make it unlawful is merely inoperative, and leaves the original contract in force. Eng. and Am. Enc. of Law, Vol. 3, page 890.

Where a city expressly contracts to pay for paving a street, a subsequent modification of the details of the contract, and in which provision is made for the assessment and collection of certain portions of the expense, which mode of collection was subsequently declared by the court to be illegal, will not be held to be an abandonment or waiver of the original agreement of the city to pay for the paving. City of Memphis v. Brown, 20 Wall. (U. S.) 289.

By the law merchant an oral promissory note is impossible; it must be in writing; consequently an oral agreement varying such a note is repugnant to the whole transaction, and it will be rejected as void. Bishop on Contracts, section 770.

After the executory contract has been made, it may be converted into a complete bargain and sale by the appropriation of specific goods to the contract. The sole element deficient in a perfect sale is thus supplied. The contract has been made in two successive stages instead of being completed at one time, but it is none the less one contract, namely, a bargain and sale of goods. 1 Benj. on Sales, 4th Am. Ed., Sec. 488.

An executory sale is a contract for the transfer of property. The transfer of title is the execution of that contract. Tiedeman on Sales, Sec. 1.

Any contract made for the purpose of giving effect to an illegal agreement, or directly having its origin therein or based thereon, or growing immediately out of the same, is void. Greenhood on Public Policy, Rule 10.

An illegal contract vitiates all substituted contracts, and also all contracts contrived or intended to carry that contract into effect. Boutelle v. Melendy, 19 N. H. 196, 49 Am. Dec. 252.

If the contract be in part only connected with the illegal transaction, and growing immediately out of it, although it be in effect a new contract, it is thereby equally tainted. Nash v. Monheimer, 20 Ill. 217; Penn v. Bornman, 102 Ill. 531; Webster v. Sturges, 7 Brad. 560; Shenk v. Phelps, 6 Brad. 613.

Undoubtedly the parties, after having made an illegal contract, are at liberty to enter into another contract in relation to the same subject-matter, precisely the same as though no former contract existed. But the new contract must be in no sense a continuation or modification of the old. The old contract must be utterly abandoned, so that neither its terms, nor any claim of right springing out of it, shall enter into the new. Webster v. Sturges, 7 Brad. 564.

APPELLEE'S BRIEF, WM. BARGE AND WM. McNETT, ATTORNEYS.

Appellee contended that the appellant never intended any definite quantity should be fixed by the agreement, but that the amount should be determined by its own discretion. This uncertainty is a patent ambiguity, and can not be affected by extraneous evidence. A writing may be ambiguous because the writer intends it to be so. 2 Wharton, Ev., Sec. 957. And when so it can not be helped by parol evidence. 2 Wharton, Ev., Sec. 957.

Extrinsic evidence is not admissible to remove a patent

ambiguity, and the instrument is inoperative and void. 1 Am. & Eng. Ency., 529.

A patent ambiguity is an ambiguity which arises upon the words of the will, deed or other instrument, as looked at in themselves, and before they are attempted to be applied to the object, or to the subject which they describe. 1 Am. & Eng. Ency., 527.

The general rule (with exceptions not important in this instance) is, " that a promise is not a good consideration for a promise, unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement." 1 Parson's Contracts, 374, 449; McKinley v. Watkins, 13 Ill. 140.

If there is one entire consideration for two several contracts and one of these contracts is for the performance of an illegal act, the whole is void. 1 Addison on Contracts (Morgan's Ed.), 439, Sec. 300; Hopkins v. Prescott, 4 C. B., 578.

The contract set up in the third plea is in violation of section 130, chapter 38 of the Revised Statutes of this State, and the demurrer was correctly sustained to it for that reason. By that agreement appellant only bought the privilege of ordering any quantity of coal not in excess of 12,000 tons.

This privilege is only an option, and is most clearly so. Schneider v. Turner et al., 130 Ill. 28.

A privilege is an option. A right or privilege which a party may have to buy or sell to you at a future day is what is termed a gambling contract, or an option within the meaning of the Illinois statute. White v. Barber, 123 U. S. 392.

We can neither read out of the contract, language which the parties put in it, nor into the statute expressions which the legislature, for a manifest purpose, omitted. The contract, tested by the statute, is void, and therefore each count of the declaration obnoxious to the demurrer interposed. White v. Barber, 123 U. S. 392; Osgood v. Bander, 75 Iowa 550; Webster v. Sturges, 7 Brad. 560; Wolcott v. Heath,

78 Ill. 433; Pickering v. Cease, 79 Ill. 328; Pixley. v. Boyn-
ton, 79 Ill. 351; Miller v. Bensley, 20 Brad. 528; Terney v.
Foote, 4 Brad. 394; Pearce v. Foot, 113 Ill. 228; Lyon v.
Culbertson, 83 Ill. 33; Gilbert v. Guager, 8 Bissell (U. S. C.
C.), 244.

The test of whether a demand connected with an illegal
transaction is capable of being enforced by law, is whether
the plaintiff requires the aid of the legal transaction to es-
tablish his case.   Swan v. Scott, 11 Serg. & Rawle (Penn.)
155; Thomas v. Brady, 40 Pa. St. 564, 470; Scott v. Duffey,
14 Pa. St. 18; 2 Benjamin on Sales (3d Eng., 4 Am. Ed.),
p. 681, Sec. 788, note 2; Columbia Bank & Bridge Co. v.
Haldeman, 7 W. & S. (Penn.) 233; Walt v. Green, 73 Pa.
St. 198, 200.

Or whether the case or defense is made out through the
aid of the illegal contract.  If so, it must fail.  Taylor v. Ches-
ter, L. R., 4 Q. B. 309, 314; 2 Benjamin on Sales, Sec. 788, p.
681 (3d Eng., 4 Am. Ed.); Gilliam v. Brown, 43 Miss. 641;
Roby v. West, 4 N. H. 290; Welsh v. Wesson, 6 Gray (Mass.)
505; Phalen v. Clark, 19 Conn. 421; Manchester v. Concord,
20 Atl. Rep. 383; Woodworth v. Bennett, 43 N. Y. 275;
Armstrong v. National Bank, 133 U. S. 433; Roberts v.
Roberts, 2 B. & Ald. 367.

An obligation will be enforced, though indirectly con-
nected with an illegal transaction, if it is supported by an
independent consideration, so that the plaintiff does not re-
quire the aid of the illegal transaction to make out his case.
Armstrong v. American Exchange Bank, 133 U. S. 434.

The general rule is, that if an agreement is legally void
and unenforceable by reason of some statutory or common
law prohibition, either party to the agreement, who has
received anything from the other party, and has failed to
perform the agreement on his part, must account to the lat-
ter for what has been so received.   Under the circumstances,
the courts will grant relief irrespective of invalid agree-
ment, unless it involves some positive immorality, or there
are other reasons of public policy why the courts should
refuse to grant any relief in the case.  2 Morawetz, Pri-

vate Corporations, Sec. 721; 2 Chitty on Con., 11th Am. Ed. 976; Lowell v. Boston R. R., 23 Pick. (Mass.) 24, 32; While v. Frankil Bank, 22 Pick. (Mass.) 181–186; Utica Ins. Co. v. Rip, 8 Cow. (N. Y.) 20; Manchester R. R. v. Concord R. R., 20 Atl. Rep. 383.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

The action of the court in sustaining a demurrer to the special pleas of set-off was not erroneous. The alleged contract of August 4th set out in the first plea, is void for uncertainty. By it "Minnesota Lumber Company agrees to buy its requirements of anthracite coal for the season of 1886–1887, of the Whitebreast Coal Co., to be furnished as ordered." What its requirements were to be is nowhere defined. The contract furnishes no data from which the coal company could approximate the probable demands which might be made on it; whether one ton or one hundred thousand tons can not be ascertained from the agreement. This uncertainty is not removed by any allegation in the plea. Whether the "requirements" were for consumption in operating a factory or for furnishing the retail trade of a particular town, county, State, or country, or whether for speculation, can not be learned from the contract or any allegation in the plea. Furthermore the agreement does not bind the lumber company to require any anthracite coal. It is, therefore, void for want of mutuality. The general rule is that a promise is not a good consideration for a promise, unless there is mutuality of engagement.

The contract set up in the second special plea, violates section 130, chapter 38 of the Revised Statutes, and is therefore void as being *malum prohibitum*.

"Whoever contracts to have or give to himself or another, the option to sell or buy, at a future time, any grain, or other commodity, stock of any railroad, or other company, or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so in relation to any such commodities, shall be fined not less than ten dollars, nor more

than one thousand dollars, or confined in the county jail not exceeding one year, or both, and all contracts made in violation of this section shall be considered gambling contracts, and shall be void." Starr and Curtis' Statutes, Vol. 1, page 721.

That the " privilege of ordering any quantity of coal not in excess of 12,000 tons," is only an option, is so clearly established by the reasoning employed by the learned judge who wrote the opinion of our Supreme Court in Schneider v. Turner et al., 130 Ill. 28, that we do not care to more than refer to that case in support of our holding.

To make out its case appellee introduced the written orders of appellant, made proof of shipments of coal on the orders and proved the value of the coal. It showed shipments in August, September, October, November and December, 1886, amounting to 4,176 tons, valued at $19,739.97, credits amounting to $10,485.61 and a balance of $9,254.36, for which last mentioned sum the Circuit Court rendered judgment. There was no dispute as to the quality of the coal delivered, but appellant contended upon the trial that the coal was ordered, shipped and accepted under the terms of the agreements of August 21, 1886, and that inasmuch as such agreement was in violation of that section of the criminal code quoted above, there could be no recovery for the unpaid balance. Such contention is most earnestly argued in this court for a reversal of the judgment. It should be borne in mind that the alleged contract is not declared upon, nor is the suit to enforce it, or to recover damages for a breach of it.

Appellee did not call to its aid the illegal contract to make out its case. It was not necessary to do so. It was only necessary to show that the coal was ordered and delivered and what was the reasonable value of it.

The claim which forms the basis of the suit is perfectly legitimate. The sale and delivery of coal is not illegal. It is only option contracts to buy or sell coal that are prohibited by statute. Although there may be some illegal feature indirectly connected with a transaction involved in a suit, yet

the plaintiff may recover if his cause of action is otherwise legitimate, and he can make out his case without calling to his aid the illegal agreement. The test of whether the demand can be enforced at law is whether the plaintiff requires the aid of the illegal contract to establish his case. Armstrong v. American Exchange Bank, 133 U. S. 434; Thomas v. Brady, 10 Pa. 164; Holt v. Green, 73 Pa. 198; Congress Co. v. Knowlton, 103 U. S. 49; Welch v. Wisson, 6 Gray 506; Mosher v. Griffin et al., 51 Ill. 184.

We are of the opinion the judgment should be affirmed.