[Civ. No. 7653. First Appellate District, Division One.—June 6, 1931.]

HARRY W. MOORE, Respondent, v. J. L. RUSSELL, Appellant.

Edwin J. Miller and Wier Casady for Appellant.

Thomas F. Hinds, F. Walton Brown and Brown, Bissell & Beery for Respondent.

THE COURT.—This action is one upon a promissory note. From a judgment in favor of the plaintiff against all of the defendants, the defendant Russell prosecutes this appeal.

It is conceded by the appellant that he executed the note as a principal obligor; that the note was due at the time of the commencement of the action and that no part thereof had been paid. The grounds urged for a reversal of the judgment may be divided into two main groups: First, appellant contends that the entire transaction, out of which arose the note in suit, was unlawful and furnished no valid consideration to support the promise of appellant; second, that the note was tainted with usury and therefore void at least as to some of its provisions. Thus prefaced we may develop the facts surrounding and creating the issues presented.

Some time prior to the year 1923 a group of persons organized a corporation under the laws of the state of Nevada, known as and called National Land Value Guaranty Company. Upon organization certain of the capital stock of said corporation was issued as promotion stock, purportedly in exchange for certain properties or rights classified as actuary tables. In the year 1923 the said corporation made application to the commissioner of corporations of the state of California for a permit to sell to the public certain of its securities. After due inquiry and investigation a permit was granted the said corporation to sell its securities as in the permit outlined. One of the express conditions upon which the said permit issued was as follows: ''That, all certificates evidencing 6500 shares of the 7000 shares of capital stock heretofore issued shall be forthwith deposited with a depositary to be selected by said certificate holder and approved by the Commissioner of Corporations, to be held as an escrow pending the further order of said Commissioner that the receipt of such depositary for such certificates shall be filed with the said Commissioner of Corporations, and that while said certificate shall be so held, the holder of the shares evidenced thereby shall not sell, or offer for sale, or otherwise transfer, or agree to sell or transfer such shares, until the written consent of said commissioner shall have been obtained so to do.'' The conditions of the permit were complied with, with reference to the deposit and the escrow.

The defendants, with may others, including one Ruffcorn, were the owners of the stock referred to in the permit as having been previously issued and which was deposited in escrow as aforesaid. Some dissension arose in the internal affairs of the corporation and it became imperative, or at least so deemed by all concerned, that the control of the corporation be changed. A party named Ruffcorn was the holder of some 3,350 shares of the stock deposited in the escrow, and with this holding maintained the desired control. The defendants seemed desirous of removing this power of control and the plan proposed was to purchase from Ruffcorn this escrowed stock. Accordingly, on the fifth day of February, 1926, defendant Russell entered into an agreement with Ruffcorn wherein the latter agreed to sell and the former to buy the said 3,350 shares at a stipulated price per share,

aggregating a large sum of money. The contract between them provided for payments extending over a long period of time. In April of 1926 one payment became due which payment was in the sum and amount of $10,000. Russell, admittedly acting in association with the remaining defendants, though the sole obligee under the contract, was experiencing difficulty in raising the amount necessary to meet this payment. On or about April 15th all of the defendants approached the plaintiff Moore seeking his aid. Moore advanced the sum of $4,250 to defendants, taking therefor their promissory note in the amount of $5,000 payable four months after date with interest at seven per cent per annum. The note becoming due was unpaid and a new note given, which is the note here in suit. Merely to preserve the accuracy of the transaction it might be noted that the first note was payable to Nyberg, one of the defendants, and by him indorsed. Inasmuch, however, as there is no question raised by the defendants other than Russell, and as the latter was admittedly a maker in the case of both notes we may pass further detail.

Appellant contends that the transfer of the escrowed stock was in violation of the terms of the permit and therefore void; that the plaintiff Moore was a party to the transfer of the Ruffcorn stock and advanced the money to defendants in furtherance of the illegal scheme and that therefore he is barred from any recovery herein. The finding of the trial court was against this contention and appellant attacks this finding as being contrary to the evidence. Here we may note the complete insufficiency of the appellant's record in the case in so far as presenting in proper form the errors relied upon or the evidence supporting his contention. In his brief and the supplement thereto he presents, in somewhat garbled form, extracts of the testimony with references to the transcript. He seems to have followed the exact course condemned so recently in *Powers* v. *Board of Public Works, ante*, p. 119 [299 Pac. 573]. The deflection in the instant case is more flagrant in that the reporter's transcript includes almost 600 pages of testimony and exhibits. However, as appellant raises a question of illegality going to the consideration of the obligation sued on, we have gone carefully over the entire transcript and find sufficient evidence to uphold the court's finding, notwithstanding that in some

instances there appears a conflict in the testimony. ██
And we need cite no authority to support the rule that
where a substantial conflict appears in the testimony it is
not the province of a reviewing court to try anew the issues
and again determine the conflict presented to the court
below.

██ There was sufficient evidence in the court below to
establish the fact that the sum of $4,250 was actually ad-
vanced to the defendants and admittedly no part thereof
has been repaid. It was shown that plaintiff Moore at some
time had been a director of the corporation and that he was
familiar with the conditions in the permit of the commis-
sioner of corporations. He knew of the contract existing
between Russell and Ruffcorn, though he was neither directly
nor indirectly interested therein. He knew further that
the money he advanced to the defendants was to be paid
directly to Ruffcorn under the terms of the Russell-Ruffcorn
contract. We deem these facts insufficient to support the
claim of appellant that the connection of Moore with the sale
of the escrowed stock was such as to render void and unen-
forceable the note herein involved. It is true that some at-
tempt was made to show an actual participation of plaintiff
in the sale contract, and that he was impliedly a party bene-
ficially interested therein. The proof offered hardly got
beyond the stage of insinuation and in such instances as the
proof offered was supported by direct testimony, the same
was flatly contradicted. It is obvious that the cause of
action resting with plaintiff on the note in no way rests upon
the sale contract. In the case of *Armstrong* v. *American
Exchange Bank,* 133 U. S. 433, 469 [33 L. Ed. 747, 10 Sup.
Ct. Rep. 450, 461, see, also, Rose's U. S. Notes], the Supreme
Court of the United States announces the rule, with citation
of many supporting authorities. The court says: "An obli-
gation will be enforced, though indirectly connected with an
illegal transaction, if it is supported by an independent con-
sideration, so that the plaintiff does not require the aid of
the illegal transaction to make out his case". In *Minnesota
Lumber Co.* v. *Whitebreast Coal Co.,* 56 Ill. App. 248, it is
said: "Although there may be some illegal feature indirectly
connected with a transaction involved in a suit, yet the plain-
tiff may recover if his cause of action is otherwise legitimate,
and he can make out his case without calling to his aid the

illegal agreement. The test of whether the demand can be enforced at law is whether the plaintiff requires the aid of the illegal contract to establish his case." In *Wayman Inv. Co.* v. *Wessinger & Wagner,* 13 Cal. App. 108 [108 Pac. 1022], we find the rule cited with approval. In *California Raisin Growers' Assn.* v. *Abbott,* 160 Cal. 601 [117 Pac. 767, 771], the court again affirms the general rule as herein announced and quotes with approval the following from the case of *Tracy* v. *Talmage,* 14 N. Y. 176 [67 Am. Dec. 132]: "I consider it, therefore, as entirely settled by the authorities to which I have referred, that it is no defense to an action brought to recover the price of goods sold, that the vendor knew that they were bought for an illegal purpose, provided it is not made a part of the contract that they shall be used for that purpose; and, provided, also, that the vendor has done nothing in aid or furtherance of the unlawful design."

In the case before us the Russell-Ruffcorn contract for the sale of the impounded stock especially refers to the escrow and the order of the commissioner of corporations and makes delivery conditioned upon the consent of the said commissioner. Each party to the contract acknowledged information of the true conditions. The stock in question was legally issued and was the property of the party attempting its sale. The contract of sale was not in itself especially enjoined by any provision of law save and except the general provision that a sale in conflict with the permit was void and, we may concede, unlawful, unless consented to by the commissioner. It was the consent of the commissioner or the lack of such consent that determined the legality of the transfer. The record discloses that the rules of the commissioner of corporations, having the effect of laws so far as compliance with the permit might be involved, required that before application for permission for transfer under escrow would be considered, there must first be a contract showing the terms of sale and the parties thereto. While we do not feel called upon to analyze the transaction and determine the enforceability of the contract of sale as between Russell and Ruffcorn, deeming a decision on this point unnecessary to the present controversy, we do hold that there is nothing in the record disclosing a factual condition so far connecting plaintiff Moore with the contract as to taint the promissory

note in suit with an unlawfulness that might attach to the original contract of sale.

The next point urged by appellants involves the question of usury. The trial court found that the note in question, so far as it involved payment of any sum greater than $4,250, was usurious. The note provided for payment of $5,000 as principal. This, of course, was a finding that the provision for interest could not be enforced. The finding was predicated upon the admission that not more than $4,250 was actually received by defendants as consideration for the execution of the note, and that the remaining $750 was in the nature of a bonus or premium. It was conceded that plaintiffs had received on the note payments totaling $145.83. The note in controversy having provided for the payment of $750 bonus and a flat interest at seven per cent was plainly usurious. Thus tainted the plaintiff lost the right to claim or collect interest in any amount. His right to collect the unpaid portion of the principal remained unaffected. There being no interest collectible, it follows that all payments made on the note must necessarily be credited as payments upon the principal. (*Haines* v. *Commercial Mtg. Co.*, 200 Cal. 609 [53 A. L. R. 725, 254 Pac. 956, 960, 255 Pac. 805].)

Appellant contends, further, that the payments having been made by way of interest should be trebled in computing the offset against the principal. Respondent contends that the amount actually paid as interest did not compute an usurious rate and therefore the provisions of the Usury Law have not been violated. It will suffice to say that the statute provides that no action shall be maintained to recover interest in any sum where the contract provides for interest at a prohibited rate.

The next contention of respondent is that the Usury Law specifies the trebling of unlawful interest payments as a penalty and limits the right of the injured party by requiring that an action be brought therefor with appropriate allegations of fact. In other words, that the demand for recovery in treble the amount constitutes a separate action or at least an affirmative defense. And it being conceded here that there was no pleading on the part of defendants especially demanding the enforcement of the penalty, respondent contends that the penalty is waived.

The Usury Act, found in Statutes of 1919, at page lxxxiii, provides: First, that the contracts therein specified are unlawful and when made in violation of the statute there can be no recovery of interest in any sum; second, it provides that every person who shall *have paid* any greater sum than is allowed by the preceding section shall recover against the person to whom the amount was paid treble the amount so paid. It seems manifest that there is a distinction between the contract and the payments thereunder. In the first portion of the law the general policy relative to usury is announced and the penalty provided, namely, a forfeiture of all interest or right to claim or collect the same. In the second portion it provides a remedy, not where a contract to pay usurious interest has been made, but where actual usurious payments have been made.

In the instant case it is a matter of mere calculation that the note was in reality for the sum of $4,250; that for the period of five months there had been paid as interest the sum of $145.83. From this it is a matter of mere calculation to demonstrate that the amount actually paid was not at a prohibited rate. The sum actually paid was at a rate of approximately eight and a quarter per cent which rate is not usurious. We hold therefore, as indicated, that while the amount paid must be credited upon the principal, inasmuch as no interest at all is collectible nor subject to withholding as interest paid, yet the provisions of the statute require that the amount paid as interest must have been in excess of that allowed by law, namely, twelve per cent before the one making such payment is entitled to recover back treble the amount paid. One argument presenting itself against this construction is to the effect that the statute allows no interest where the rate is usurious and that therefore any payments so made as interest must necessarily be in a greater sum than that allowed by statute. The answer is that the wording of the statute is that the party complaining must have paid "a greater sum . . . than is allowed to be received" and not a greater sum than is not allowed to be received.

The manifest intent of all usury laws is to protect unfortunate borrowers or those whose need makes them the ready prey of hard bargainers. In the language of Preston, J., in the Haines case: "The usury law is to be used as

a shield and not as a sword.'' The law gives to the needy borrower a double protection. It makes void any contract for interest at a rate greater than twelve per cent per annum and holds that where the rate prescribed by contract exceeds that amount no interest, as such, can be collected, and that whatever sums are paid as interest will be deemed as extinguishing, *pro tanto,* the principal. It goes then a step further and provides that where the borrower, perhaps ignorant of the law or perhaps forced through necessity, has been obliged to pay an usurious rate of interest he may recover treble the amount thus illegally paid. Being in the nature of a penalty, this portion of the law must be strictly construed. Holding, as we do, that the Usury Law demonstrates obviously the policy and intent of the lawmakers to distinguish between the contract for usurious interest and the collection or payment thereof, it follows that defendants are not entitled to a set-off or stated account against the note in treble the amount actually paid. ██ The note provided for the payment of a reasonable attorney's fee. The court allowed a fee of $230. No complaint is made that such an allowance is unreasonable. The contention is made that on account of the note being tainted with usury, no attorney's fee can be collected in an action to recover on the note.

The argument is rested first upon the theory that the taint of usury destroys the entire obligation both as to principal and interest. The contrary is the settled law of the state as announced in the Haines case, *supra,* and other cases subsequent thereto, unnecessary to cite. It would perhaps be true that if the entire contest had been on the question of interest payments and the only issue before the court were that of the usury and that, but for the usury involved, the note would have been paid, then attorneys' fees would not be allowable. Such is not the case here. Defendants resisted payment of principal regardless of the interest. A similar situation was presented in the Haines case wherein it was contended that the taint of usury destroyed the provisions of the note accelerating the due date. It was there held that if the option to accelerate payment depended entirely upon the payment of usurious interest it could not be exercised. The court, however, held the provisions for payments of principal and of interest separable and attached the option to a default in principal payments. So here, it

was necessary to enforce the collection of the admittedly legal demand for the principal and we see no reason why the provision of the note as to the payment of attorneys' fees should not be enforced. The judgment of the lower court awards plaintiff the sum of $4,250. This judgment is modified and the court below directed to deduct from said award to plaintiff the sum of $145.83. After this deduction the plaintiff will recover judgment against the defendants in the sum of $4,104.17. As thus modified the judgment will be affirmed with costs to the respondent.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 6, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1931.