[No. B013995. Second Dist., Div. Six. Apr. 2, 1986.]

EDWARD GREEN et al., Plaintiffs and Appellants, v.
FUTURE TWO et al. Defendants and Respondents.

COUNSEL

Reetz & Fox and Randall Fox for Plaintiffs and Appellants.

Price, Postel & Parma and J. Terry Schwartz for Defendants and Respondents.

OPINION

WILLARD, J.*—Plaintiffs appeal from a judgment in their own favor on a promissory note and for foreclosure of the deed of trust securing the note. They contend (1) that the trial court erred in finding the note not to be exempt from usury restrictions, and (2) that they should have received more than 7 percent per annum interest from the date of maturity of the note to the date of the judgment. We find no error and affirm.

---

*Assigned by the Chairperson of the Judicial Council.

## FACTS

Respondents are four individuals who are general partners of "Future Two." The partnership owned real property in Santa Barbara, including one parcel improved with a residence. It needed $130,000 to refinance the improved parcel. Nola Evans, one of the partners and a licensed real estate broker, contacted a friend, Robert Reisner, for the purpose of obtaining a loan. Reisner contacted appellants and arranged a meeting attended by appellants, Evans, his own attorney, and himself. This ultimately resulted in the loan, promissory note, and deed of trust that are the subject of this lawsuit.

On October 5, 1981, appellants furnished respondents $156,000. Respondents immediately paid appellants $26,000 as "points." They made and delivered to appellants their promissory note for $156,000 payable in one year, with interest at the rate of 10 percent per annum payable monthly. Typed into the body of the note was the following provision: "If, upon maturity of this Note, the balance of unpaid principal and interest is not paid in full, the interest rate shall be 25% (TWENTY FIVE PER CENT) per annum, beginning on date of maturity of Note." The note was guaranteed by Reisner and secured by a second deed of trust on the improved real property.

Prior to trial, respondents had paid appellants $46,280, including the $26,000 mentioned above.

The trial court found that the transaction was usurious. The judgment denied appellants recovery of any interest for the year prior to maturity. The payment of $46,280 was credited on principal and judgment granted for $109,720. To this was added interest at the rate of 7 percent per annum from the maturity of the note to the date of judgment, in the amount of $17,664.83, making a total judgment of $127,384.83.

## DISCUSSION

### I

██  Appellants' first contention is that because Evans was a licensed real estate broker the transaction was exempt from the usury restrictions of article XV, section 1 of the California Constitution. That section prescribes maximum interest rates (exceeded in this transaction) and then provides that the restrictions shall not apply to loans *made* by building and loan associations, credit unions, banks, pawnbrokers, and other identified lending institutions. Included in the exceptions are "loans made or arranged by any

person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property . . . ." Appellants claim that respondent Evans, a licensed real estate broker, "made or arranged" the loan within the meaning of the constitutional exception. We have found no appellate decision in point and consider this issue as a matter of first impression.

Evans certainly did not *make* the loan. She was one of the borrowers. In New Webster's Dictionary of the English Language (1984) page 559, "loan," as a noun, is defined as "[t]he act of lending . . .;" and at page 546, "lend," as a verb, is defined as "[t]o make a loan." A borrower does not make a loan; he receives or obtains a loan from a lender. The exemption for loans *made* by a real estate broker is inapplicable.

We also note that the exemption for loans made or arranged by real estate brokers is contained in the same sentence that exempts loans made by building and loan associations, credit unions, banks, pawn brokers, and other named lending institutions. Such institutions are in the business of lending money, not borrowing it. The phrase, "made by," appearing twice in the same sentence, would seem to have the same meaning in each instance. If it means lending in one part of the sentence it means lending in another part of the same sentence.

Next for consideration is whether the loan was *arranged* by Evans. The trial court found that it was not. To the contrary, it found that the loan was arranged by Reisner, who had brought the lenders and the borrowers together, and that Evans was merely a borrower. This narrows the issue to whether, as a matter of law, a secured loan to a real estate broker acting on his own behalf is "arranged" by the broker and therefore exempt from the usury restrictions. To so hold we would have to find that a borrower is necessarily a loan arranger. Such a finding is not justified. A loan set up or shaped by an intermediary may, in accordance with plain English, be said to be arranged by the intermediary. But neither lending nor borrowing necessarily involves "arranging."

Section 1 of article XV of the Constitution was adopted as an initiative measure in 1979. The Legislature has sought to clarify the provision by enacting Civil Code section 1916.1.[1] It states that a loan is arranged by a

---

[1]That section, as amended in 1985, now reads: "The restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property. For purposes of this section, a loan or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of

person licensed as a real estate broker only if two things occur. One is that the broker acts for another or others, not for himself. The other is that he receives or expects to receive compensation. This excludes from the exemption the broker who, as in this case, acts for himself. It also excludes the broker who, as in this case, does not receive or expect to receive compensation. ■ There is a "strong presumption in favor of the Legislature's interpretation of a provision of the Constitution." (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 692 [97 Cal.Rptr. 1, 488 P.2d 161].)

■ We are not unmindful of the final sentence of Civil Code section 1916.1, which reads: "The term 'made or arranged' includes any loan made by a person licensed as a real estate broker as a principal or as an agent for others, and whether or not the person is acting within the course and scope of such license." This literally excepts from the usury restriction loans made 'by licensed brokers whether or not they are acting as brokers. (*In re Lara* (9th Cir. 1984) 731 F.2d 1455; *Garcia* v. *Wetzel* (1984) 159 Cal.App.3d 1093 [206 Cal.Rptr. 251].) It follows the language of the constitutional provision which, as indicated above, exempts loans made by real estate brokers. The legislative policy of exempting loans made by brokers even though they are not acting as brokers, while not exempting loans received by brokers who are not acting as brokers, is not readily apparent. It is entirely consistent, however, with the basic approach of section 1 of article XV of the Constitution, which exempts loans made by various types of lenders but does not in any manner deal with the type of borrower. ■ Where wording is unambiguous we must follow its plain meaning. (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 68, p. 3307, and cases cited therein.)

We conclude that the trial court was correct in holding that the transaction involved in this case was not exempt from the usury restrictions of article XV, section 1 of the Constitution.

---

compensation for soliciting, negotiating, or arranging the loan for another, (2) acts for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase, lease, or exchange of real property or a business for another and (A) arranges a loan to pay all or any portion of the purchase price of, or of an improvement to, that property or business or (B) arranges a forbearance, extension, or refinancing of any loan in connection with that sale, purchase, lease, exchange of, or an improvement to, real property or a business, or (3) arranges or negotiates for another a forbearance, extension, or refinancing of any loan secured by real property in connection with a past transaction in which the broker had acted for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase, lease, or exchange of real property or a business. The term 'made or arranged' includes any loan made by a person licensed as a real estate broker as a principal or as an agent for others, and whether or not the person is acting within the course and scope of such license."

## II

█ The remaining issue is whether the trial court erred in granting appellants interest at the rate of only 7 percent per annum from the date the loan was payable to the date of the judgment. Inasmuch as the note was usurious, the interest provisions were void, and the note was properly treated as if it called for no interest. (*Moore* v. *Russell* (1931) 114 Cal.App. 634 [300 P. 479]; *Simmons* v. *Patrick* (1962) 211 Cal.App.2d 383 [27 Cal.Rptr. 347]; *Epstein* v. *Frank* (1981) 125 Cal.App.3d 111 [177 Cal.Rptr. 831].) The payee of a noninterest-bearing note is entitled to interest at the legal rate from the date of maturity to the date of judgment. (*Puppo* v. *Larosa* (1924) 194 Cal. 717 [230 P. 439]; *Epstein* v. *Frank, supra,* 125 Cal.App.3d at p. 123.) █ Appellants contend that pursuant to section 685.010 of the Code of Civil Procedure the legal rate of interest is 10 percent. That section, however, states in subdivision (a): "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." Article XV, section 1 of the Constitution fixes the legal rate of interest where not otherwise specified by the parties at 7 percent per annum. It states that the rate of interest on a judgment shall be set by the Legislature at not more than 10 percent per annum. The Legislature has set the rate for judgments at 10 percent. Where, as here, the obligation is not a judgment and does not specify an interest rate, the constitutional rate of 7 percent per annum applies.

█ Appellants also contend that interest between maturity and judgment is in the nature of damages and that the promissory note requirement for the payment of 25 percent per annum after maturity is in the nature of liquidated damages. As indicated above, however, the note states that upon maturity "the interest rate shall be 25% (Twenty Five Per Cent) per annum . . . ." The 25 percent per annum obligation is not designated as a late charge or as liquidated damages. In plain language it is stated to be *interest.* As such, it is usurious and void.

The judgment is affirmed.

Gilbert, Acting P. J., and Abbe, J., concurred.

A petition for a rehearing was denied May 1, 1986, and appellants' petition for review by the Supreme Court was denied July 16, 1986.