[No. G029283. Fourth Dist., Div. Three. July 30, 2002.]

PARK TERRACE LIMITED, Plaintiff and Appellant, v.
ROBERT D. TEASDALE et al., Defendants and Respondents.

[And four other cases.†]

†Colton General v. Teasdale (No. 00CC03183); Intervest Chino Investors, Ltd. v. Teasdale (No. 00CC03188); IVR Peartree Limited v. Teasdale (No. 00CC03190); Mini I. Ltd. v. Teasdale (No. 00CC03193).

## COUNSEL

Dennis V. Menke and James D. Menke for Plaintiff and Appellant.

Prenovost, Normandin, Bergh & Dawe and Michael G. Dawe for Defendants and Respondents.

## OPINION

**RYLAARSDAM, J.**—This appeal is from summary judgments in consolidated actions wherein five real estate partnerships sought damages from and declaratory relief against a lender for loaning them money at allegedly usurious interest rates. The trial court granted summary judgment in all five actions, based on the exemption for loans arranged by a licensed real estate broker. (Cal. Const., art. XV, § 1, subd. (2); Civ. Code, § 1916.1.) We agree the exemption applies and affirm the judgment.

### FACTS

Plaintiffs, Park Terrace Limited, Colton General, Intervest Chino Investors, Ltd., IVR Peartree Limited, and Mini I. Ltd., are limited partnerships which hold and manage real estate. John Minar is a licensed real estate broker, and a general partner of these five entities as well as of Park Village Limited. The latter limited partnership is not a party to this action. Defendants Robert D. and Audrey B. Teasdale were sued as trustees of defendant Teasdale Family Trust.

Park Village wanted to refinance debts secured by its property, including a note held by defendants. Defendants, reluctant to take a discounted payoff, and, acting through Minar, suggested "mov[ing] the trust deed on to something else." Ultimately, Park Village paid off defendants with proceeds from a new loan secured by property owned by the Intervest partnership. The note evidencing this loan provided for an initial annual interest rate of 10 percent, later increasing to 13.5 percent.

As part of this transaction, Intervest's partners signed a certificate that stated: "The Partnership designated general partner John Minar, a real estate broker licensed by the State of California . . . to act on the partnership's

behalf in soliciting, negotiating and arranging the Loan with the Lender. In accordance with such designation, John Minar commenced discussions with the Lender . . . . In consideration for such services, general partner John Minar will receive compensation from the Partnership as a general partner, in accordance with the Partnership Agreement. Based on the foregoing activities of general partner John Minar, the undersigned hereby certify to the Lender that, in accordance with California Civil Code section 1916.1 the Loan is not usurious. The undersigned further certify that they understand that the certification contained in this paragraph was a material inducement to the Lender in making the Loan."

Defendants also made secured loans to the other four plaintiffs with interest exceeding the maximum legal rate. Each note provided: "This loan has been arranged through a licensed Real Estate Person."

Subsequently, plaintiff filed complaints alleging defendants loaned them money at interest rates that were "usurious and violate[d] the California Constitution . . . ." Defendants moved for summary judgment, claiming the usury limitations did not apply because "[t]he loans were arranged by a real estate broker for compensation . . . ."

DISCUSSION

*Introduction*

Article XV, section 1, subdivision 2 of the Constitution limits the interest rate which may be charged on nonpersonal loans. But exempted are "any loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property . . . ." (*Ibid.*)

To clarify the scope of that exemption, the Legislature enacted Civil Code section 1916.1 (section 1916.1). (*Winnett v. Roberts* (1986) 179 Cal.App.3d 909, 920 [225 Cal.Rptr. 82].) That section provides: "The restrictions upon rates of interest contained in . . . the California Constitution shall not apply to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property. For purposes of this section, a loan or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another, . . . . The term 'made or arranged' includes any loan made by a person licensed as a real estate broker as a principal or as an agent for others, and whether or not the person is acting within the course and scope of such license." (§ 1916.1.)

The notes charged interest exceeding the constitutional maximum. But Minar held a California real estate broker's license, and defendants rely on this 'and his participation in the loan transactions to exempt the loans from the interest rate cap. Relying in part on Minar's declaration he did not arrange the loans, plaintiffs contend the exemption does not apply because Minar neither "arranged" the loans nor performed acts requiring him to have a license. Both arguments lack merit.

*Minar Arranged the Loans*

 First, we conclusively presume the truth of the provision in each note that a licensed real estate person "arranged" the obligation. (Evid. Code, § 622.) Even were we not to rely on this conclusive presumption, the evidence supports such a conclusion. In the Intervest transaction, Minar approached defendants, seeking their assistance in refinancing the Park Village parcel. When Teasdale suggested moving the trust deed to another property, it was Minar who proposed using Intervest's property and it was he who then negotiated the terms of the new obligation. Minar participated similarly in the other loan transactions.

We construe the term "arrange" according to its common and ordinary meaning. (*Del Mar v. Caspe* (1990) 222 Cal.App.3d 1316, 1328 [272 Cal.Rptr. 446].) A licensed real estate broker arranges a loan if he or she acts for another and receives or expects to receive compensation for it. (*Stickel v. Harris* (1987) 196 Cal.App.3d 575, 583 [242 Cal.Rptr. 88]; *Green v. Future Two* (1986) 179 Cal.App.3d 738, 742-743 [225 Cal.Rptr. 3].) Plaintiffs argue that, as a general partner for each of them, Minar did not act for others. They also contend that, because his only payment was a share of each partnership's profits, he failed to satisfy the compensation requirement. The two cases that considered these arguments under analogous factual circumstances reached opposite results.

In *Green v. Future Two, supra,* 179 Cal.App.3d 738, Evans, a licensed broker and partner in a real property partnership, contacted Reisner, who arranged a meeting between the Greens and Evans. The Greens made a secured loan to the partnership that bore annual interest of 25 percent. In a subsequent foreclosure action, the trial court found the loan was usurious. The Court of Appeal affirmed, rejecting the claim Evans arranged the loan. It could not state that, "as a matter of law, a secured loan to a real estate broker acting on his own behalf is 'arranged' by the broker and therefore exempt from the usury restrictions." (*Green v. Future Two, supra,* 179 Cal.App.3d at p. 742.) "[N]either lending nor borrowing necessarily involves

'arranging.' " (*Ibid.*) Noting the two requisite elements for arranging a loan, the court held that a broker who "acts for himself" or "does not receive or expect to receive compensation" is excluded from the exemption. (*Id.* at p. 743.)

But *Stickel v. Harris, supra,* 196 Cal.App.3d 575 came to a different conclusion. There, after a licensed broker approached Stickel about investing in a real estate development by a yet-to-be-formed joint venture, she loaned funds at 30 percent. When the borrowers defaulted, Stickel successfully sued to recover the principal and interest at the agreed-upon rate. The appellate court upheld the lender's recovery, finding the broker did not solicit the loan on his own behalf but arranged the loan as a representative of the joint venture. He did not forfeit his exempt status just because he joined the joint venture. (*Stickel v. Harris, supra,* 196 Cal.App.3d at p. 585.) By obtaining the necessary capital for the joint venture, he provided "a vital service from which all involved[, including himself,] would benefit." (*Ibid.*) The broker expected to be paid from the profits of the venture, and "[a]nticipated profits qualify as compensation. [Citations.]" (*Ibid.*)

We agree with *Stickel* in determining the exemption applies in this case. Acting as an intermediary, Minar negotiated the loans for each partnership's benefit, not merely for his own. (Compare *Winnett v. Roberts, supra,* 179 Cal.App.3d at pp. 917-921 [exemption inapplicable where broker acts on his own behalf] with *Chapman v. Farr* (1982) 132 Cal.App.3d 1021, 1026 [183 Cal.Rptr. 606] [exemption for arranging loan applied where broker structured loan made by others].) Minar's right to participate in partnership profits satisfied the requirement he expect compensation for his efforts.

Our conclusion comports with the policies underlying usury statutes and the real estate broker exemption. ■ "Usury laws are designed to protect the public from sharp operators who would take advantage of 'unwary and necessitous borrowers.' [Citations.]" (*Del Mar v. Caspe, supra,* 222 Cal.App.3d at p. 1326, fn. 4.) Plaintiffs, limited partnerships that own and manage real estate, are not unsophisticated borrowers, and Minar contacted defendants about the loans, not vice versa. In adopting California Constitution, article XV and in enacting section 1916.1, "[t]he electorate and Legislature . . . considered the licensing requirements for and regulatory control over real estate brokers sufficient to protect the borrowing public from usury and dishonest real estate brokers." (*Del Mar,* at p. 1326, fn. omitted.)

Plaintiffs try to distinguish *Stickel,* arguing its finding that substantial evidence, adduced during a trial, supported the judgment differs from the

summary judgment procedure employed here. While *Stickel* did affirm on that basis, it also held, "[The broker] was not acting exclusively as a borrower; he was simultaneously acting as an agent soliciting the loan on behalf of others . . . ." (*Stickel v. Harris, supra,* 196 Cal.App.3d at p. 587.) *Stickel* also rejected the claim that "there can be no exemption unless [the broker] either received or expected to receive compensation for soliciting the loans . . . separate and independent from his entitlement to a share of the joint venture's profits." (*Id.* at p. 589, fn. omitted.)

 Minar acted on behalf of each plaintiff when negotiating the loans; his membership in each of the partnerships entitled him to receive part of the profits generated. Thus, applying *Stickel,* the requirement Minar "arranged" the loan was satisfied.

*Section 1916.1 Is Not Limited to Brokers Who Act in a Capacity Requiring a License*

 Plaintiffs argue the real estate broker exemption does not apply because it is limited to a broker who engages in an activity requiring a license and, they contend, a license is not required unless the broker acts in "expectation of special compensation." Thus, plaintiffs argue, Minar did not act in a capacity requiring he be licensed because his compensation derived from his status as a partner and thus was not "special." Plaintiffs base these arguments on Business and Professions Code section 10133 which, in part, declares the "acts for which a real estate license is required" do not include conduct by "a general partner of a partnership with respect to real property owned or leased by the . . . partnership, . . . if the acts are not performed by the . . . partner in expectation of special compensation." (Bus. & Prof. Code, § 10133, subd. (a)(1).)

The Constitution exempts from the usury law all loans "arranged by any person licensed as a real estate broker . . . ." (Cal. Const., art. XV, § 1, subd. (2).) It does not limit the exemption to brokers who act in a licensed capacity. Neither does section 1916.1 so limit the exemption. In fact, the statute expressly provides that the phrase "made or arranged" applies even if the broker is not acting "within the course and scope of such license." (*Ibid.*)

*Stickel,* in dicta, rejected a similar attempt to graft Business and Professions Code section 10133's special compensation element onto section 1916.1. "[T]he concept of 'special compensation' found in [Business and Professions Code section 10133,] subdivision (a)(1) must be confined to that

statute. The Legislature had the opportunity to import that concept into section 1916.1, but it must be presumed that it consciously and deliberately refused to do so . . . ." (*Stickel v. Harris, supra,* 196 Cal.App.3d at p. 591.) Although dicta, *Stickel*'s discussion of Business and Professions Code section 10133's inapplicability when construing section 1916.1 is persuasive. This defeats plaintiffs' contention that, because the law did not require Minar to have a license when arranging the loan, the exemption cannot apply.

Legislative history also confirms *Stickel*'s and our construction. An uncodified provision of section 1916.1 noted the broker exemption was added "on the basis that real estate brokers are qualified by the state on the basis of education, experience, and examination, and that the licenses of real estate brokers can be revoked or suspended if real estate brokers perform acts involving dishonesty, fraud, or deceit with intent to substantially benefit themselves or others, or to substantially injure others." (Stats. 1983, ch. 307, § 2, p. 899.) Because the state may discipline real estate brokers for wrongdoing unrelated to their status as licensees (*Stickel v. Harris, supra,* 196 Cal.App.3d at pp. 588-589), there is no reason why section 1916.1 should not be applied even to brokers who act in a capacity which does not require they be licensed.

A further reason why the Constitution and section 1916.1 should not be construed as being limited to activities requiring the broker be licensed is the language in both enactments that exempts brokers who "make" loans. (See *Garcia v. Wetzel* (1984) 159 Cal.App.3d 1093, 1097-1098 [206 Cal.Rptr. 251]; *In re Lara* (9th Cir. 1984) 731 F.2d 1455, 1459, 1462.) There are no public policy reasons to treat the making of a loan by a licensed real estate broker different from his or her arranging a loan.

Plaintiff relies on *In re Lara, supra,* 731 F.2d 1455, which reached a contrary result in holding the exemption does not apply when a broker arranges a loan under circumstances where the law does not require a license. (*Id.* at p. 1463.) No California decision has followed *Lara* on this point. We disagree with its analysis of the issue and decline to follow it. Furthermore, as pointed out in *In re Hein* (Bankr. S.D.Cal. 1986) 60 B.R. 769, 774-775, the opinion in *Lara* was based on an earlier version of section 1916.1 and the statutory definition of a real estate broker. The exemption applies even though the law did not require Minar be licensed when he arranged the loans.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Sills, P. J., and Moore, J., concurred.

A petition for a rehearing was denied August 28, 2002, and appellant's petition for review by the Supreme Court was denied November 20, 2002.