Filed 5/20/13 (Unmodified opn. attached)
Reposted 5/21/13 to attach opinion

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| GREGORY W. BOCK, as Trustee, etc., | C069863 |
| Plaintiff and Appellant, | (Super. Ct. No. 76151) |
| v. | MODIFICATION OF OPINION |
| CALIFORNIA CAPITAL LOANS, INC. et al., | (NO CHANGE IN JUDGMENT) |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Nevada County, Sean P. Dowling, Judge. Affirmed.

John J. Hartford; Wilson & Wilson and Donald A. Wilson for Plaintiff and Appellant.

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, Aaron S. McKinney; The Law Offices of Kirk S. Rimmer and Kirk S. Rimmer for Defendant and Respondent.

TH E COURT:

The opinion of this court filed May 14, 2013, in the above entitled case is modified as follows:

The second sentence of the second paragraph on 8 page beginning "According to Bock" is deleted and the following sentence is inserted in its place:

1

According to Bock, the interest that the lender, California Capital, was to have earned on the loan cannot be considered compensation to Speckert for purposes of section 1916.1, even though Speckert was the sole shareholder of the corporation, and since Speckert did not take a commission on the transaction, Speckert did not act for compensation or in expectation of compensation in arranging the loan.

This modification does not affect the judgment.


    ROBIE               , Acting P. J.


    MURRAY            , J.


    DUARTE             , J.

Filed 5/14/13  Unmodified version

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| GREGORY W. BOCK, as Trustee, etc., | C069863 |
| Plaintiff and Appellant, | (Super. Ct. No. 76151) |
| v. | |
| CALIFORNIA CAPITAL LOANS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Nevada County, Sean P. Dowling, Judge.  Affirmed.

John J. Hartford; Wilson & Wilson and Donald A. Wilson for Plaintiff and Appellant.

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, Aaron S. McKinney; The Law Offices of Kirk S. Rimmer and Kirk S. Rimmer for Defendant and Respondent.

In California, a loan secured by a lien on real property is exempt from the constitutional prohibition on usury if the loan is made or arranged by a licensed real estate broker.  (Cal. Const., art. XV, § 1; Civ. Code,[1] § 1916.1.)  Section 1916.1 explains

---

[1]      All further section references are to the Civil Code unless otherwise noted.

1

that "a loan . . . is arranged by a person licensed as a real estate broker when the broker . . . acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another."

In this case, we conclude that even when the lender on such a loan is a corporation that is wholly owned by the arranging broker, the broker can still be found to have arranged the loan "for another" for purposes of section 1916.1. We also conclude that in such a situation, the broker may be found to have arranged the loan "in expectation of compensation" even if the only compensation the broker will receive is the profit his wholly owned corporation reaps from the interest on the loan. Based on these conclusions, we affirm the judgment here.

FACTUAL AND PROCEDURAL BACKGROUND

When plaintiff Gregory W. Bock, trustee of the Bock Family Trust, needed a loan, a third party put him in contact with defendant Leo Speckert, a licensed real estate broker and the sole shareholder of defendant California Capital Loans, Inc. (California Capital). Speckert told Bock what the terms of the loan would be and made out disclosure statements regarding the loan. California Capital loaned Bock $1.2 million secured by a deed of trust on certain real property the trust owned. Speckert did not take a commission on the transaction.

The promissory note for the loan provided for an interest rate of 15 percent, with monthly interest-only payments to commence in April 2009 and to continue until March 2012, when the entire loan principal was to be repaid. When Bock defaulted on the loan payments, California Capital foreclosed and purchased the trust's property at a trustee's sale under the deed of trust in April 2010. In May 2010, Bock filed suit against California Capital and Speckert, claiming (among other things) that the interest rate on the loan exceeded the maximum allowed by the California Constitution and therefore the trustee's sale was void. Ultimately, a brief court trial was held in August 2011 on Bock's claim of usury. The trial court found the note was exempt from the constitutional usury

2

prohibition under section 1916.1, which applies to "any loan . . . made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property." Accordingly, the trial court entered judgment in favor of defendants.[2] Following the denial of his motion for a new trial, Bock timely appealed.

DISCUSSION

On appeal, Bock contends section 1916.1 did not apply here because the loan was made by California Capital, not Speckert, and Speckert cannot be deemed to have arranged the loan within the meaning of the statute because: (1) he did not act in expectation of receiving a commission on the transaction; and (2) he did not arrange the loan "for another" because the lender was his wholly owned corporation. Finding no merit in these arguments, we affirm.

Section 1 of article XV of the California Constitution imposes certain limitations on the amount of interest that can be charged on a loan. That provision also contains an exemption for "any loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property." As relevant here, section 1916.1 implements that exemption by specifying that "a loan . . . is arranged by a person licensed as a real estate broker when the broker . . . acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another."

Under the part of section 1916.1 at issue here, then, a licensed real estate broker can be deemed to have arranged a loan only if the broker "act[ed] for compensation or in

_____

**2** Defendants have requested that we take judicial notice of the complaint and judgment in an unlawful detainer proceeding that California Capital commenced against Bock following the judgment in this case. As those documents are irrelevant to our resolution of this appeal, we deny that request.

3

expectation of compensation" and the broker "solicit[ed], negotiat[ed], or arrang[ed] the loan for another." (See *Green v. Future Two* (1986) 179 Cal.App.3d 738, 742–743 ["a loan is arranged by a person licensed as a real estate broker only if two things occur. One is that the broker acts for another or others, not for himself. The other is that he receives or expects to receive compensation"].)

I

*Arranging A Loan "For Another"*

Taking Bock's second argument first, the question is whether a real estate broker can be deemed to have arranged a loan "for another" when the lender is a corporation that is wholly owned by the broker. Like the trial court, we conclude the answer to that question is "yes."

First, Bock himself qualifies as "another" person separate and apart from Speckert for whom Speckert can be deemed to have arranged the loan. The evidence was that when Bock needed a loan, a third party put Bock in contact with Speckert, and Speckert told Bock what the terms of the loan would be and made out disclosure statements regarding the loan. As we explain, the statutory provisions governing those disclosure statements support the conclusion that Speckert arranged the loan for Bock within the meaning of section 1916.1.

"Business and Professions Code section 10240 requires a real estate broker to provide [a mortgage loan disclosure statement] to a borrower on a secured loan negotiated by the broker." (*Stoneridge Parkway Partners, LLC v. MW Housing Partners III* (2007) 153 Cal.App.4th 1373, 1377.) By its terms, Business and Professions Code section 10240 applies to "[e]very real estate broker. . . acting within the meaning of subdivision (d) of Section 10131." In turn, subdivision (d) of Business and Professions Code section 10131 provides that "[a] real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment" "[s]olicits borrowers or lenders for or negotiates loans or

4

collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity." (See *Stickel v. Harris* (1987) 196 Cal.App.3d 575, 583 ["Given unmistakable parallels of language, it is both logical and appropriate for section 1916.1 to be construed in light of Business and Professions Code section 10131"].)

Business and Professions Code section 10131 makes clear that a real estate broker can perform services for both lenders *and borrowers* in connection with loans secured by liens on real property. Bock points to no authority suggesting that a broker can only be deemed to have performed such services for either the lender or the borrower and not for both sides in the transaction. Thus, on the facts here, even if Speckert can be deemed to have arranged the loan for his wholly owned corporation, California Capital, he can also be deemed to have arranged the loan for Bock, who certainly qualifies as "another."

Second, even if we were to look only at the relationship between Speckert and California Capital in addressing this issue, we would still conclude that Speckert arranged the loan "for another" within the meaning of section 1916.1. "It is fundamental that a corporation is a legal entity that is distinct from its shareholders." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.) Thus, California Capital qualifies as "another" for purposes of the loan Speckert arranged, even though Speckert was the sole shareholder of the corporation.

Bock argues that under the case law, "a broker [can] 'arrange' a loan for a business he [i]s a part of only if there [is] some other person who also benefit[s] from the transaction." In Bock's view, because only Speckert -- as the sole shareholder of California Capital -- would have benefited from the loan his corporation made, Speckert cannot be deemed to have arranged the loan "for another."

The case law does not support Bock's argument. In *Stoneridge*, this court concluded that "an officer and employee of the managing company of a limited liability company, which was the manager of another limited liability company, which was the

5

general partner of the lender" "negotiated and arranged the . . . loan as a third party intermediary, or as the statute reads, 'for another' " because he "was not negotiating solely on his own behalf." (*Stoneridge Parkway Partners, LLC v. MW Housing Partners III*, *supra*, 153 Cal.App.4th at pp. 1379, 1381.) The same is true here. Even if Speckert was, indirectly, the only individual who would benefit from the loan because he was the sole shareholder of the lending corporation, he still was -- like the individual in *Stoneridge* -- "not negotiating solely on his own behalf" because he and his corporation are *distinct legal entities*, and therefore he was necessarily acting "for another" in negotiating the loan for his corporation.[3]

None of the four other cases Bock cites -- all of which this court discussed in *Stoneridge* -- is any more helpful to him. As this court explained in *Stoneridge*, the court in *Winnett v. Roberts* (1986) 179 Cal.App.3d 909 "determined a loan was not exempt from the usury prohibition where the only broker involved in the transaction was the borrower." (*Stoneridge Parkway Partners, LLC v. MW Housing Partners III*, *supra*, 153 Cal.App.4th at p. 1380.) Obviously, that holding has no application here because Speckert was neither the borrower nor the lender in the transaction at issue. As we have noted, Speckert and California Capital are legally distinct from each other and therefore Speckert cannot be treated as the lender simply because he was the sole shareholder in the corporation that loaned the money to Bock.

As for *Green v. Future Two*, *supra*, 179 Cal.App.3d at page 738, which "concerned a loan made to a partnership, the general partner of which was a licensed

---

**3**     We note that Bock made no attempt here to use the alter ego doctrine to pierce the corporate veil and thereby establish that for purposes of this transaction Speckert and California Capital should be treated as one and the same. (See *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [describing circumstances in which the courts "will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation"].)

broker," the *Stoneridge* court concluded that on this particular point *Green* was "not persuasive authority" because "[t]he *Green* court reached its conclusion ipse dixit, without analyzing the broker's efforts on behalf of the partnership." (*Stoneridge Parkway Partners, LLC v. MW Housing Partners III*, *supra*, 153 Cal.App.4th at p. 1380.) Thus, we find no guidance in *Green*.

In *Stickel v. Harris*, *supra*, 196 Cal.App.3d at page 575, "the First Appellate District determined the exemption for loans negotiated by licensed real estate brokers applied to a loan made to a partnership and a joint venture even though a licensed broker who solicited and negotiated the loan was one of the partners" because "[t]he broker 'was not acting exclusively as a borrower; he was simultaneously acting as an agent soliciting the loan on behalf of others, conduct for which a license was required . . . .' " (*Stoneridge Parkway Partners, LLC v. MW Housing Partners III*, *supra*, 153 Cal.App.4th at p. 1381, quoting *Stickel*, at p. 587.) Here, because Speckert and California Capital are distinct legal entities, Speckert was not acting as the lender in the transaction at all; he was, at best, acting as an agent *for* his corporation and thus was acting "for another."

Finally, in *Park Terrace Limited v. Teasdale* (2002) 100 Cal.App.4th 802, "the Fourth Appellate District determined a licensed broker who was a general partner in five limited partnerships arranged loans to the partnerships, and thus the loans were exempt from the usury limitation" because the broker " 'negotiated the loans for each partnership's benefit, not merely for his own.' " (*Stoneridge Parkway Partners, LLC v. MW Housing Partners III*, *supra*, 153 Cal.App.4th at p. 1381, quoting *Park Terrace*, at p. 807.) A similar conclusion applies here: Speckert negotiated the loan for the benefit of his corporation -- a separate legal entity -- not merely for his own benefit.

Based on the foregoing analysis, we reject Bock's argument that Speckert could not be deemed to have acted "for another" in arranging the loan from California Capital to Bock.

## II

### *Arranging A Loan "In Expectation Of Compensation"*

Bock's other argument on appeal is that Speckert cannot be deemed to have arranged the loan within the meaning of section 1916.1 because he did not act in expectation of receiving a commission on the transaction. We find no merit is this argument either.

As we have noted, under the part of section 1916.1 at issue here a broker must have "act[ed] for compensation or in expectation of compensation" for the exception from the constitutional usury provision to apply. According to Bock, the interest that the lender, California Capital, was to have earned on the loan but cannot be considered compensation to Bock for purposes of the section 1916.1, even though Bock was the sole shareholder of the corporation, and since Speckert did not take a commission on the transaction, Speckert did not act for compensation or in expectation of compensation in arranging the loan.

Bock's argument is inconsistent with decisional law under the statute that we find persuasive. In *Stickel*, the licensed real estate broker whose actions were at issue (Butticci) was a member of a joint venture and of a partnership that were the borrowers on the loans in question. (*Stickel v. Harris, supra*, 196 Cal.App.3d at pp. 579-580.) There, the appellate court noted that "[p]recisely what constitutes 'compensation' for purposes of section 1916.1 is a question of first impression." (*Stickel*, at p. 584.) The court then continued as follows: "Within the context of other statutes, compensation is a concept which has received an extremely broad definition sufficient to encompass the receipt of just about any form of monetary or tangible benefit that is not self-bestowed. [Citations.] '[T]he nature of compensation . . . is as variable as the particular facts involved.' [Citation.] The term 'interest' has been treated with a similar expansiveness. [Citations.]

"Whether a payment, advantage, benefit, or other form of consideration amounts to compensation has traditionally been regarded as an issue to be decided by the trier of fact. [Citations.] In usury cases the trier of fact is vested with the power to resolve many issues attending and including the ultimate question of whether a particular transaction is usurious. [Citations.] By parity of reasoning, it follows that the issue of whether Butticci 'arranged' a nonusurious loan within the meaning of section 1916.1 was likewise committed to the trier of fact unless, as a matter of law, a given transaction failed to meet the two-prong test cited previously. The only task confronting us is to decide if the trial court's determination that the loan was exempt can claim the support of substantial evidence considered by the trial court in its capacity as the trier of fact. [Citations.]

"[I]t is undisputed that [Butticci] was not soliciting the loan for himself, but as the intermediary for the partnership and the joint venture. Butticci did not forfeit this status solely because he became a member of these entities. Butticci testified that he expected to be compensated when the profits generated by sale of the condominiums were paid to the partners at the conclusion of the project. By obtaining the financial wherewithal which would enable the partnership and the joint venture to operate, he was providing a vital service from which all involved would benefit. Those benefits would accrue to all of the partners and joint venturers, who would each obtain a pro rata share of the ultimate profits. The fact that Butticci's reward would be deferred until a later time is of no moment. Anticipated profits qualify as compensation. [Citations.] Accordingly, substantial evidence supports the trial court's finding that Butticci solicited the loan with an expectation of compensation. This finding in turn supports the court's determination that the loan was exempted by section 1916.1 from the interest limitations of the usury law." (*Stickel v. Harris, supra*, 196 Cal.App.3d at pp. 584-585; see also *Park Terrace Limited v. Teasdale*, *supra*, 100 Cal.App.4th at pp. 806-808 [following *Stickel* on this point].)

9

Applying the reasoning of *Stickel* here, there was substantial evidence on which the trial court could have found that Speckert "act[ed] . . . in expectation of compensation" in arranging the loan from California Capital to Bock because, as the sole shareholder of California Capital, Speckert could have expected to reap the benefits of the interest his corporation was supposed to earn on the loan: 15 percent per year for three years on a loan principal of $1.2 million -- i.e., $540,000. There is no logical reason to require Speckert to have earned, or expected to earn, compensation solely in the form of a commission from his corporation for section 1916.1 to apply here. Whether he took his compensation for the deal by drawing a dividend from the corporation or by receiving a commission from the corporation makes no difference under *Stickel*. The profit his corporation expected to reap from the interest payments on the loan was sufficient to satisfy the "compensation" requirement of the statute just as the profits Butticci's joint venture and partnership expected to reap from the sale of the condominiums they were going to build on the property they purchased with the loan proceeds was sufficient to satisfy that requirement in *Stickel*.

This conclusion is bolstered by the provision in subdivision (d) of Business and Professions Code section 10131, discussed above, that refers to a broker acting "for a compensation or in expectation of a compensation, *regardless of the form or time of payment*." (Italics added.) We have noted already that "it is both logical and appropriate for section 1916.1 to be construed in light of Business and Professions Code section 10131." (*Stickel v. Harris*, *supra*, 196 Cal.App.3d at p. 583.) The italicized language of Business and Professions Code section 10131, subdivision (d) emphasizes that we are not to draw fine distinctions between various forms of compensation -- i.e., a commission versus a corporate dividend -- in determining whether a licensed real estate broker has acted in his or her licensed capacity. Accordingly, under the reasoning of *Stickel*, there was substantial evidence to support the trial court's implied finding here that Speckert

10

acted in expectation of compensation in brokering the loan from California Capital to Bock.

Ignoring *Stickel* on this point, Bock relies on two cases to support his contention that the expectation that California Capital would earn interest on the loan did not satisfy the "compensation" requirement of section 1916.1. He first cites *In re Lara* (9th Cir. 1984) 731 F.2d 1455. In *Lara*, a licensed real estate broker (Zager) and his friend (Pion) loaned money to the Laras secured by a deed of trust on their home. (*Id.* at pp. 1457-1458.) The Ninth Circuit concluded that "the portion of the loan funded by Zager [wa]s exempt [from the constitutional usury prohibition under section 1916.1] because it was 'made' by a licensed real estate broker." (*Lara*, at p. 1462.) As for the portion of the loan funded by Pion, the question for the court was whether that portion of the loan was "arranged" by a licensed real estate broker. (*Ibid.*) The court concluded that it was not "[b]ecause Zager did not receive a commission for soliciting Pion's participation in the loan." (*Id.* at p. 1463.) "Zager and Pion argue[d] that [the court] define[d] the term 'compensation' too narrowly. Zager claim[ed] that he was 'compensated' for soliciting a lender inasmuch as he would not have undertaken the loan, and would have received no interest from the Laras, absent Pion's participation." (*Ibid.*) The Ninth Circuit disagreed, concluding as follows: "The fact that Zager would profit if Pion agreed to undertake the loan . . . does not imply that Zager was acting for compensation. Under California law, a broker is not acting in his licensed capacity unless he receives compensation for acting on behalf of someone else. [Citation.] A broker who realizes a profit from participating in a real estate transaction on his own behalf does not act for 'compensation.' [Citations.] It follows that Zager did not receive compensation for bringing Pion into the transaction, and we hold, therefore, that Pion's portion of the loan was not 'arranged' by a licensed real estate broker." (*Ibid.*)

We do not find *Lara* persuasive on this point for two reasons. First, it was noted in *In re Hein* (Bankr. S.D.Cal. 1986) 60 B.R. 769, 775 that "Business and Professions

11

Code [section] 10131 was amended in 1984, after *In re Lara*, to add the emphasized portion of the introductory paragraph, as follows:  [¶]  " 'A real estate broker within the meaning of this part is a person who, for a compensation or in the expectation of a compensation, *regardless of a form or time of payment*, does or negotiates to do one or more of the following acts or acts for another or others . . . .' "  Thus, in reaching its conclusion, the *Lara* court did not have the benefit of the statutory language that we have found persuasive here (see above).

Second, *Lara* is distinguishable on its facts, inasmuch as the Ninth Circuit treated the part of the loan Zager made on his own behalf separately from the part of the loan Pion made.  The Ninth Circuit essentially concluded that the interest Zager expected to receive on the part of the loan he made could not be considered, at the same time, to be compensation that he expected to receive for "arranging" the part of the loan Pion made.  No such issue arises here.  Here, there was only one loan -- made by California Capital to Bock -- and the only compensation Speckert expected to receive for brokering that single loan was the profit he would reap from the interest his corporation earned on the loan.  As we have explained, that profit gave the trial court a substantial evidentiary basis for finding that Speckert acted with the expectation of compensation in arranging the loan.

The second case on which Bock relies is *Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430, which he contends "is squarely on fours with the present case."  As the court explained in that case, "[p]laintiffs Creative Ventures, LLC (Creative), and Arden 2002, LLC (Arden), borrowed nearly $3 million from defendant Jim Ward & Associates (JWA), a California Corporation, to finance two real property development projects.  The loans were evidenced by four promissory notes

12

secured by deeds of trust on the real property. Each of the notes called for interest payments in excess of the maximum permitted by the California Constitution. (Cal. Const., art. XV, § 1.) The interest charges would have been lawful if the loans had been 'made or arranged' by a licensed real estate broker (Civ. Code, § 1916.1), as JWA held itself out to be. As it happened, JWA was not so licensed." (*Creative Ventures*, at p. 1435.) The trial court found JWA liable for usury, and the appellate court found the evidence sufficient to support that ruling. (*Id.* at pp. 1435-1436.)

On appeal, JWA argued the loans were "exempt from the usury law because, as a corporation, it could only act through its directors, officers, or other agents and the loans were actually arranged by [Jim] Ward, who was licensed." (*Creative Ventures, LLC v. Jim Ward & Associates*, *supra*, 195 Cal.App.4th 1442-1443.) The appellate court explained that "although the parties argue over the evidence of Ward's role in the negotiations, the arguments miss the point. The question is not what Ward did but whether he was acting on behalf of the corporation or in his individual interest when he did it. As to that factual question, the trial court implicitly found that, to the extent Ward was involved, he was acting on behalf of JWA. There is ample evidence to support the finding." (*Id.* at p. 1443.) In particular, the court noted that (1) "the promissory notes . . . specifie[d] that the loans were being arranged by a licensed broker and identifie[d] the broker as JWA"; (2) the managing member of the borrowers (Schink) "thought JWA was the broker arranging the loans because that is what Lee [the attorney who helped Ward form JWA] told him and that is what he read in the loan documents"; (3) "[t]hat Lee and Ward believed the transaction was conducted on behalf of the corporation is evidenced by their mutual belief that the corporation was licensed; licensing the corporation was a concern only if the loans were to be arranged on behalf of the corporation"; (4) "Lee's

13

understanding that the individuals were acting on behalf of the corporation is further evidenced by his describing lending practices not in terms of what Ward did, but in terms of what the company did." (*Id.* at pp. 1436, 1443-1444.) The appellate court concluded that "[t]his is substantial evidence to support the trial court's conclusion that the parties' true intent was that JWA arranged the loans; Ward, Lee, and Locker acted on behalf of JWA. Since JWA was not licensed, the loans are not exempt from the usury laws. The trial court did not err in declaring the interest terms null and void and finding JWA liable for usury." (*Id.* at p. 1444.)

The reason *Creative Ventures* is of no assistance to Bock here is that in this case the trial court impliedly found that Speckert arranged the loan at issue by acting in his individual capacity as a licensed real estate broker, and the question on appeal is simply whether there was substantial evidence to support *that* finding. We have concluded already that there was. The fact that different evidence in *Creative Ventures* -- namely, the evidence that the licensed individual was acting on behalf of the corporation rather than in his individual capacity -- led to the appellate court affirming a different trial court finding in that case, namely, that the loan was arranged by the unlicensed corporation rather than the licensed individual -- simply has no logical bearing on the outcome of Bock's appeal here.

For the foregoing reasons, substantial evidence supports the trial court's finding that section 1916.1 applied here, and there was no trial court error on this point. [4]

---

[4] Because we uphold the judgment on this basis, we do not address defendant's alternate argument that the appeal is barred by res judicata.

14

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                                   ROBIE                    , Acting P. J.


We concur:


        MURRAY                       , J.


        DUARTE                       , J.

15