[Civ. No. 24354. Third Dist. Apr. 8, 1986.]

DON E. WINNETT et al., Plaintiffs and Appellants, v.
ANDREW J. ROBERTS et al., Defendants and Respondents.

## Counsel

Kronick, Moskowitz, Tiedemann & Girard, Leonard M. Friedman, Thomas C. Hughes, Fred Crane and Michael V. Hesse for Plaintiffs and Appellants.

Daniel G. Nauman for Defendants and Respondents.

## Opinion

**PUGLIA, P. J.**—Plaintiffs Don and Susan Winnett brought an action to enjoin the foreclosure sale of real property under a trust deed securing a $7,000 promissory note given by plaintiffs to defendants Andrew and Elane Roberts. Plaintiffs alleged the note was usurious and that no part of it had been paid. The trial court issued a temporary restraining order halting the sale, conditioned upon plaintiffs paying defendants the principal within five days. Although the $7,000 principal was paid within five days, the court

denied a preliminary injunction, declaring: "The note is not usurious because it was arranged by a licensed real estate broker and is secured by real property."

After the foreclosure sale was held, plaintiffs amended their complaint, seeking to set aside the sale and recover damages. Thereafter, the trial court granted defendants' motion for summary judgment. Following entry of judgment plaintiffs moved to set aside the trustee's sale and trustee's deed. The trial court denied the motion. Plaintiffs appeal from the judgment and the order denying their postjudgment motion.

On appeal, plaintiffs' principal contention is that the $7,000 note, which calls for interest at an annual rate of 40 percent, is usurious. Defendants counter that the loan is exempt from the usury law. For the reasons which follow, we conclude that the exemption of loans made or arranged by real estate brokers from the constitutional restrictions relating to usurious loans does not apply where the borrower is the only real estate broker involved in the loan transaction. We shall therefore reverse the judgment.

■ Summary judgment is proper only where the moving party is entitled to judgment as a matter of law because all documents submitted and matters judicially noticed in the proceeding and all inferences reasonably deducible therefrom raise no triable issues as to any material fact. (Code Civ. Proc., § 437c, subd. (c); *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10].) The facts material to this appeal are undisputed.

In August 1981, defendants loaned plaintiffs $7,000. In return, plaintiffs executed a $7,000 promissory note secured by a deed of trust on real property. The note, payable August 17, 1982, bore annual interest of 40 percent. At the time of the loan, plaintiff Don Winnett was a licensed real estate broker; he borrowed the money to pay for personal expenses. Defendant Andrew Roberts, who lent the money to plaintiffs, was not a licensed real estate broker.

The note was not paid when it became due. In October 1982 defendants initiated proceedings to foreclose on the real property securing the note. A notice of trustee's sale was recorded July 28, 1983.

On August 9, 1983, plaintiffs made a written tender of the principal sum of $7,000 plus 10 percent interest as a final settlement of the debt. Sufficient funds were available in plaintiffs' bank account to satisfy the tender, but defendants rejected the offer. Plaintiffs filed this lawsuit on August 22, 1983, the scheduled date of the foreclosure sale.

The trustee's sale was delayed by operation of the temporary restraining order and payment of the $7,000 principal. It was held on September 12, 1983. The trustee sold the property to defendants for $4,415.51.

I

Under California Constitution, article XV, section 1 (hereafter article XV), the maximum interest rate which may be charged on loans in writing for "use primarily for personal, family, or household purposes" is 10 percent per annum. Exempted from the interest rate limitation are "any loans, *made or arranged* by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property, . . ." (Italics added.)[1] The loan at issue here was usurious unless the real

---

[1]Article XV reads in relevant part: "The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest: [¶] (1) *For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum;* provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes; or . . . [¶] . . . *No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.* [¶] *However, none of the above restrictions shall apply to* any obligations of, loans made by, or forbearances of, any building and loan association as defined in and which is operated under that certain act known as the 'Building and Loan Association Act,' approved May 5, 1931, as amended, or to any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining industrial loan companies, providing for their incorporation, powers and supervision,' approved May 18, 1917, as amended, or any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining credit unions, providing for their incorporation, powers, management and supervision,' approved March 31, 1927, as amended or any duly licensed pawnbroker or personal property broker, or *any loans, made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property,* or any bank as defined in and operating under that certain act known as the 'Bank Act,' approved March 1, 1909, as amended, or any bank created and operating under and pursuant to any laws of this State or of the United States of America or any nonprofit cooperative association organized under Chapter 1 (commencing with Section 54001) of Division 20 of the Food and Agricultural Code in loaning or advancing money in connection with any activity mentioned in said title or any corporation, association, syndicate, joint stock company, or partnership engaged exclusively in the business of marketing agricultural, horticultural, viticultural, dairy, live stock, poultry and bee products on a cooperative nonprofit basis in loaning or advancing money to the members thereof or in connection with any such business or any corporation securing money or credit from any federal intermediate credit bank, organized and existing pursuant to the provisions of an act of Congress entitled 'Agricultural Credits Act of 1923,' as amended in loaning or advancing credit so secured, or any other class of persons authorized by statute, or to any successor in interest to any loan or forbearance exempted under this article, nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting

estate broker exemption applies. The real estate broker exemption was enacted as part of an initiative measure, Proposition 2, at the November 1979 special election.

■ Preliminarily, we point out that the meaning of the term "made" appearing in the real estate broker exemption is not in issue. In common parlance, the person who makes the loan of money is the lender. (See, e.g., Civ. Code, §§ 1916.8, 1916.9, subd. (c), 1917.020, subd. (e); Fin. Code, §§ 24002, 24007, 24009.) The person who receives the loan is the borrower (see, e.g., Fin. Code, § 18004). ■ By analogy to the language of article XV dealing with "loans made by" building and loan associations, banks, credit unions, and other exempt lenders, an exempt loan is "made" under the real estate broker exemption when the broker acts as a principal in the transaction by lending his own money. (See Harroch & Dana, *The Real Estate Broker Exemption from the California Usury Law* (Cont.Ed.Bar 1985) Selected Articles from the Real Property Law Reporter 171, 173-174; 4 Miller & Starr, Current Law of Cal. Real Estate (1985 supp.) § 28:25, p. 438.) Statutory and decisional law is in accord. (Civ. Code, § 1916.1; Stats. 1983, ch. 307, § 1; *Orden* v. *Crawshaw Mortgage & Investment Co.* (1980) 109 Cal.App.3d 141 [167 Cal.Rptr. 62]; *Garcia* v. *Wetzel* (1984) 159 Cal.App.3d 1093 [206 Cal.Rptr. 251]; *In re Lara* (9th Cir. 1984) 731 F.2d 1455, 1462.) Where as here the only participant in the loan transaction who is licensed as a real estate broker is the borrower, the loan has not been "made" by the broker within the meaning of the exemption. Defendants do not contend to the contrary.

In this appeal the parties debate the meaning of the term "arranged" as used in the real estate broker exemption. Underlying the summary judgment in favor of defendants is the trial court's conclusion, in denying the preliminary injunction, that the $7,000 loan from defendants was "arranged" by the borrower, plaintiff Don Winnett, a licensed real estate broker.

■ Courts and commentators have observed that the meaning of "arranged" is unclear. Standing alone and without explication, "arranged" fails to convey precisely what activities on the part of a licensed real estate broker constitute arrangement of a loan. (*In re Lara, supra,* 731 F.2d at pp. 1462-1463; Harroch & Dana, Selected Articles from the Real Property Law Reporter, *supra,* at pp. 174-175; 4 Miller & Starr, Current Law of

---

or as connected with the rate of interest hereinbefore fixed. *The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action.*" (Italics added.)

Cal. Real Estate, *supra*, § 28:25, p. 438.) Like many other words in common usage (see *Carman* v. *Alvord* (1982) 31 Cal.3d 318, 326-327 [182 Cal.Rptr. 506, 644 P.2d 192]; *Mills* v. *County of Trinity* (1980) 108 Cal.App.3d 656, 660 [166 Cal.Rptr. 674]), "arranged" is a term of amorphous dimensions.

In the present context, defendants submit that the identity of the loan arranger turns on the relative involvement of the borrower and lender in the necessary and formal steps culminating in the loan. This mechanical approach renders the term "arranged" almost meaningless. In the sense urged by defendants, every borrower participates in arranging a loan, if only by signing a promissory note and holding out his hand to receive the money; every lender participates in arranging a loan, if only by securing the necessary funds and tendering the money.

■ Where statutory or constitutional phrases are uncertain, a fundamental rule of construction is that the courts look to the apparent legislative intent to effectuate the purpose of the law. (*Massachusetts Mutual Life Ins. Co.* v. *City and County of San Francisco* (1982) 129 Cal.App.3d 876, 880 [181 Cal.Rptr. 370].) ■ As with other constitutional provisions, language in a constitutional initiative measure should be read in context and given a liberal and common sense interpretation which will promote rather than defeat the objectives of the framers. (*Ibid.; Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Mills* v. *County of Trinity, supra,* 108 Cal.App.3d at p. 660.) ■ Where "'a word of common usage has more than one meaning,'" one that will best serve the legislative purpose should be adopted, "'even though the ordinary meaning of the word is thereby enlarged or restricted . . . .'" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ Also, the courts should "'construe enactments to give specific content to terms that might otherwise be unconstitutionally vague. [Citations.]'" (*Amador,* at p. 245, quoting *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].)

■ As an aid in discerning the probable intent of uncertain language, it is appropriate to consider the ballot summary, arguments, and analysis presented to the electorate in connection with an initiative measure. (*Amador,* at pp. 245-246.) Since the adopting body is presumed to be aware of existing laws (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744]), it is also proper to construe a term used in the measure in light of related enactments which by prior judicial or administrative construction have already invested the term with a special meaning.

(*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 850-851 [59 Cal.Rptr. 609, 428 P.2d 593].)

The ballot pamphlet analysis by the Legislative Analyst accompanying Proposition 2 explained: "Under existing law, loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property are subject to a 10 percent interest rate ceiling. Such loans commonly are made by mortgage brokers and mortgage bankers. Under this measure such loans would be exempt from the constitutional limitations on interest rates that may be charged." (Ballot Pamp., Special Statewide Elec. (Nov. 6, 1979) p. 10.)

When Proposition 2 was enacted in 1979, Business and Professions Code sections 10130 and 10131, subdivision (d), required (as they do now) a real estate brokerage license of anyone who for compensation or in expectation of compensation "Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property. . . ." This activity is descriptive of that of a mortgage loan broker. (See *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 [157 Cal.Rptr. 392, 598 P.2d 45].)

A basic aspect of mortgage loan brokerage is that the broker act in a representative capacity on behalf of another. The agency relationship is a common denominator of all other activities for which a real estate brokerage license is required. (See Bus. & Prof. Code, §§ 10130, 10131.) Business and Professions Code section 10133, subdivision (a), specifically exempts from the definition of a real estate broker "Anyone who directly performs any of the acts within the scope of this chapter with reference to his own property . . . ." This statutory provision "codifies a universally accepted rule that a person dealing with his or her own property is not acting as a broker." (*Garcia* v. *Wetzel, supra,* 159 Cal.App.3d at p. 1097.) As principals in a loan transaction, both the lender and the borrower necessarily act on their own behalf and not as agent for another.

Before the enactment of Proposition 2, no exemption contained in article XV even arguably applied to a special class of borrower. All exempted classes of persons were particular kinds of lenders otherwise regulated by statute. As stated in the analysis by the Legislative Analyst presented to the electorate in connection with Proposition 2: "The Constitution specifically exempts the following lenders from the usury law: savings and loan associations, state and national banks, industrial loan companies, credit unions, pawnbrokers, personal property brokers and agricultural coopera-

tives." (Cal. Ballot Pamphlet, *supra,* at p. 10.) With the adoption of Proposition 2, real estate brokers who "make" loans secured by real property, i.e., who lend, as well as those who arrange such loans were added as another exempt category of lenders. That arrangers were not intended to include borrowers is underscored by the final sentence in the exemption paragraph of article XV, which reads: "The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees . . . commissions, discounts or other compensation *which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan . . . of . . . money, . . .*" (Italics added.)

When Proposition 2 is considered in its historical context, we are convinced that the exemption for "arranged" loans was not intended to apply to situations such as the instant one where no third-party intermediary is involved in the loan transaction. (See *Chapman* v. *Farr* (1982) 132 Cal.App.3d 1021, 1026 [183 Cal.Rptr. 606].)

Subsequent developments confirm the correctness of our conclusion. The Legislature initiated Proposition 2 as Assembly Constitutional Amendment No. 52 (Stats 1979 (Reg. Sess.) res. ch. 49). It has since made a legislative finding, declaring the justification for the broker exemption to have been ". . . that real estate brokers are qualified by the state on the basis of education, experience, and examination, and that the licenses of real estate brokers can be revoked or suspended if real estate brokers perform acts involving dishonesty, fraud, or deceit with intent to substantially benefit themselves or others, or to substantially injure others." (Stats. 1983, ch. 307, § 2.) Correlating that justification with the instant circumstances, it is obvious that the mere fact that a necessitous borrower is licensed as a real estate broker would not serve to protect him from the exactions of a usurious lender, nor would his license be subject to revocation simply because he had undertaken an obligation to pay the lender usurious interest. In a usurious transaction, the borrower, not the lender, is the injured party.

The legislative finding to which we have referred is the uncodified part of a statute which added section 1916.1 to the Civil Code. As originally enacted (Stats. 1983, ch. 307, § 1) section 1916.1 clarified that a loan "made" within the meaning of article XV "includes any loan made by a person licensed as a real estate broker as a principal or as an agent for others, and whether or not the person is acting within the course and scope of such license." In 1985 section 1916.1 was amended to clarify the circumstances under which a loan is "arranged" within the meaning of article XV. The amendment provides: "For purposes of this section, a loan

or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another, (2) acts for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase, lease, or exchange of real property or a business for another and (A) arranges a loan to pay all or any portion of the purchase price of, or of an improvement to, that property or business or (B) arranges a forbearance, extension, or refinancing of any loan in connection with that sale, purchase, lease, exchange of, or an improvement to, real property or a business, or (3) arranges or negotiates for another a forbearance, extension, or refinancing of any loan secured by real property in connection with a past transaction in which the broker had acted for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase, lease, or exchange of real property or a business." (Stats. 1985, ch. 489, § 1; see *In re Lara, supra,* 731 F.2d at p. 1463.)

 The legislative interpretation of article XV contained in Civil Code section 1916.1 is not unreasonable. Accordingly it is entitled to, and we indulge, a strong presumption in its favor. (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 692-694 [97 Cal.Rptr. 1, 488 P.2d 161]; *People v. Savala* (1981) 116 Cal.App.3d 41, 59 [171 Cal.Rptr. 882].)

 In sum, where the transaction is between borrower and lender, each acting on his own behalf, and there is no third party licensed real estate broker acting for compensation as intermediary, the loan is not "arranged" by a broker within the meaning of the usury law. It follows that the loan at issue here was not exempt from the proscription of article XV and was therefore usurious.

## II

 When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever. (*Williams v. Reed* (1957) 48 Cal.2d 57, 68 [307 P.2d 353]; *Stephans v. Herman* (1964) 225 Cal.App.2d 671, 673 [37 Cal.Rptr. 746].) Prior to the hearing on the preliminary injunction application, plaintiffs paid defendants the $7,000 principal in full. Even before commencing this action, plaintiffs had made and defendants had rejected a written tender offering to pay defendants the $7,000 principal plus interest at 10 percent (about $1,400) although they owed defendants no interest on the usurious loan. When rejected, such a tender is the equivalent to actual production and tender of the money. (Code Civ. Proc., § 2074.)

Any time before foreclosure, a tender of the full amount properly due on a loan secured by a trust deed extinguishes the lien on the property (Civ. Code, §§ 2903-2905), calling a halt to the foreclosure proceedings. (*Kleckner* v. *Bank of America* (1950) 97 Cal.App.2d 30, 33 [217 P.2d 28]; *Lichty* v. *Whitney* (1974) 80 Cal.App.2d 696, 701 [182 P.2d 582]; *Bisno* v. *Sax* (1959) 175 Cal.App.2d 714, 724 [346 P.2d 814]; see also Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) § 6.22, pp. 277-278.) Given that plaintiffs did in fact tender an amount equal to (indeed, in excess of) their legal obligation to defendants (see *Karlsen* v. *American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 118 [92 Cal.Rptr. 851]), they were released from all subsequent liability for interests, costs, and attorney fees incurred by defendants in connection with the foreclosure proceedings. (See *Lichty,* at p. 701.) As a deed of trust exists only as long as there is a valid trust purpose (see Civ. Code, §§ 871, 2279), plaintiffs' payment in full of the underlying debt also discharged both the obligation and the security. (See Cal. Mortgage and Deed of Trust Practice, *supra,* § 2.6, p. 22.) When an obligation secured by a deed of trust has been satisfied, the trustor-obligor is entitled to a full reconveyance of the property. (Civ. Code, § 2941, subd. (b); *Huckell* v. *Matranga* (1979) 99 Cal.App.3d 471, 476 [160 Cal.Rptr. 177].)

It follows that no valid lien existed against the property at the time of the foreclosure sale and the trial court erred in granting summary judgment to defendants after the sale and denying plaintiffs' motion to set aside the sale and trustee's deed. On remand, plaintiffs are not limited to relief in damages for the wrongful sale (see Civ. Code, § 2941, subd. (d)) but are entitled to redeem the property by having the foreclosure sale set aside and the property reconveyed to them. (See generally Cal. Mortgage and Deed of Trust Practice, *supra,* §§ 6.58-6.61, pp. 310-314.)[2]

Given our resolution of the usury issue, we do not reach plaintiffs' contention that the foreclosure sale was fatally irregular.

III

The $7,000 promissory note contained a clause: "If action be instituted on this note, I promise to pay such sum as the Court may fix as attorneys' fees." Both parties claim entitlement to attorney fees under this contractual provision.

---

[2]The remedies provided by the usury law (see Deering's Uncodified Measures 1919-1, §§ 2, 3) are not exclusive of other remedies available to the borrower at common law. (*Stock* v. *Meek* (1950) 35 Cal.2d 809, 816-817 [221 P.2d 15].)

Since defendants are not the prevailing parties, they are not entitled to an award of attorney fees. (Civ. Code, § 1717.) Civil Code section 1717 grants a reciprocal right to attorney fees when a contract provides the right to one party but not the other. (*International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 223 [145 Cal.Rptr. 691, 577 P.2d 1031].) An attorney fee provision in a promissory note is broad enough to encompass a lawsuit attacking the note as usurious. (*Thunderbird Investment Corp.* v. *Rothschild* (1971) 19 Cal.App.3d 820, 830 [97 Cal.Rptr. 112]; see also *Berge* v. *International Harvester Co.* (1983) 142 Cal.App.3d 152, 164 [190 Cal.Rptr. 815].) On remand, plaintiffs are entitled to an award of reasonable attorney fees for services rendered on appeal and at trial, said fees to be fixed by the trial court. (*Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778, 786 [191 Cal.Rptr. 8, 661 P.2d 1088].)

The judgment is reversed and the cause remanded to the trial court with directions to declare the $7,000 note usurious. The court is also directed to order cancellation of the trustee's sale, the trustee's deed and the deed of trust, to quiet plaintiffs' title as against defendants, and to take such other action as the justice of the case requires.

Evans, J., and Lytle, J.,* concurred.

A petition for a rehearing was denied May 5, 1986, and respondents' petition for review by the Supreme Court was denied June 25, 1986.

---

*Assigned by the Chief Justice.