[No. C052082. Third Dist. Aug. 3, 2007.]

STONERIDGE PARKWAY PARTNERS, LLC, Plaintiff and Appellant, v. MW HOUSING PARTNERS III, L.P., et al., Defendants and Respondents.

## COUNSEL

Wagner Kirkman Blaine Klomparens & Youmans, Douglas E. Kirkman, Roy R. Girard and Colin S. Grahl for Plaintiff and Appellant.

McDonough Holland & Allen and Michael T. Fogarty for Defendants and Respondents.

## OPINION

**NICHOLSON, J.**—A real property developer and borrower of money sued its lender, claiming the interest charged on the secured loan was usurious. The trial court awarded summary judgment to the lender, ruling the loan was exempt from the constitutional usury prohibition because it was negotiated and arranged by a licensed real estate broker. The developer argues the secured loan was not exempt because the broker was in effect the lender and was negotiating on its own behalf. We disagree and affirm the judgment because the broker, although an employee of an affiliate of the lender, acted as a third party intermediary and did not negotiate the loan on his own behalf.

### FACTS

Plaintiff Stoneridge Parkway Partners, LLC (Stoneridge), acquired real property in two phases. It borrowed $1,410,000 from WRI Investments III LLC (WRI Investments) to purchase the first phase. This loan is referred to as Stoneridge I. It is not the subject of this action. The Stoneridge I loan documents stated the loan was "made and/or arranged by WRI Investments . . . ."

To acquire the remaining phase, Stoneridge borrowed $3,366,840 from defendant MW Housing Partners III, L.P. (Housing Partners). This loan is referred to as Stoneridge II. It is the subject of this action. It was secured by a subordinate, or second, deed of trust on the real property.

The Stoneridge II promissory note called for an effective rate of interest that exceeded 10 percent. Stoneridge owed interest at the base annual rate of 10 percent on the unpaid principal balance, plus additional interest based on a

percentage of the gross sales price of each custom lot in the phase and $7,000 for each production lot in the phase.

Housing Partners, the lender on the Stoneridge II loan, is of complicated lineage. However, as will be seen, that does not obscure the answer to whether the Stoneridge II loan was exempt from the constitutional usury prohibition. Housing Partners is a California limited partnership whose sole general partner is defendant MW Housing Management III, LLC (Housing Management). Its sole limited partner is the California Public Employees' Retirement System (CalPERS), an agency of the State of California. Housing Partners has no employees of its own, but is simply a funding vehicle with its own investors. It relies on others to investigate, underwrite, and arrange its loans. In this case, CalPERS provided 80 percent of the Stoneridge II loan funds.

Housing Management, Housing Partners's general partner, is a California limited liability company comprised of two members, MacFarlane Housing, LLC (MacFarlane Housing), and WRI CP Investments III LLC (CP Investments). MacFarlane Housing also serves as an adviser to CalPERS on real estate loans and investments.

CP Investments is a State of Washington limited liability company comprised of two members, MIG Corporation and Weyerhaeuser Realty Investors, Inc. (Weyerhaeuser). Weyerhaeuser, MIG Corporation, and MacFarlane Housing provided the remaining 20 percent of the Stoneridge II loan funds not provided by CalPERS.

The Stoneridge I lender, WRI Investments, is a State of Washington limited liability company comprised of two entities, Weyerhaeuser and MIG Corporation.

Housing Management, CP Investments, and WRI Investments have no employees. Weyerhaeuser, however, has employees. Jack Marsh was a vice president and investment manager of Weyerhaeuser. At the time of these events, both Marsh and Weyerhaeuser were licensed real estate brokers. Marsh was the qualifying officer for Weyerhaeuser's license.

Marsh negotiated the Stoneridge II loan between Stoneridge and Housing Partners, and was Stoneridge's primary contact with Housing Partners. In that process, he analyzed the proposed transaction, structured the loan, set the interest rate and other key terms, prepared the written loan proposal, presented the proposal to Housing Partners's participants, reviewed the loan documentation and title reports, and supervised the loan's closing. Both Marsh and Weyerhaeuser rendered their services on the Stoneridge II loan for compensation, and in expectation of compensation.

Marsh signed the loan documentation on behalf of Housing Partners. The signature block on the loan agreement reads:

"Lender: [Housing Partners]

"By: [Housing Management]

"By: [CP Investments]

"By: [Weyerhaeuser]

"By: [John S. Marsh's signature]

". . . John S. Marsh

"Its Vice President"

The Stoneridge II loan agreement contains two errors. Paragraph 9.1 of the loan agreement, under the heading, "No Violation of Usury Laws," incorrectly states the loan was "made and/or arranged by WRI Investments . . . ." WRI Investments was not the lender on the Stoneridge II loan, was not involved in negotiating or arranging the loan, and is not a licensed real estate broker.

Paragraph 9.19 of the loan agreement, a clause designed to preclude claims for brokers' fees, provides in relevant part that "no broker other than Lender has been involved in the negotiation of the Loan . . . ." However, the lender, Housing Partners, is not a broker and has no employees.

Neither Marsh nor Weyerhaeuser provided Stoneridge with a mortgage loan disclosure statement, a document Business and Professions Code section 10240 requires a real estate broker to provide to a borrower on a secured loan negotiated by the broker. Stoneridge received no notice that Marsh or Weyerhaeuser were licensed brokers.

After paying off the Stoneridge II loan, Stoneridge filed this action against Housing Partners and Housing Management for recovery of usurious interest paid on the loan. Defendants moved for summary judgment, claiming the loan was exempt from the state Constitution's usury prohibition pursuant to the California Constitution and Civil Code section 1916.1's exemption of secured loans negotiated or arranged by a licensed real estate broker.[1] The trial court granted the motion for defendants and entered judgment in their favor.

---

[1] All subsequent undesignated references to sections are to the Civil Code.

Stoneridge appeals, claiming the trial court erred by (1) concluding as a matter of law Marsh negotiated and arranged the Stoneridge II loan within the meaning of the state Constitution and section 1916.1's exemption for brokers; (2) ruling paragraph 9.1's recital that the loan was made by WRI Investments was not conclusive and could be disregarded as an obvious mistake; and (3) admitting evidence of how the mistakes in the loan agreement occurred. We disagree with each of Stoneridge's contentions and address them in turn.

## DISCUSSION

## I

### *Standard of Review*

A trial court will grant summary judgment where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant moving for summary judgment must prove the action has no merit. He does this by showing one or more elements of the plaintiff's cause of action cannot be established or that he has a complete defense to the cause of action. At this point, the plaintiff then bears the burden of showing a triable issue of material fact exists as to that cause of action or defense. (Code Civ. Proc., § 437c, subds. (c), (*o*)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 849–850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

On appeal, we exercise our independent judgment, deciding whether undisputed facts negate Stoneridge's claims, as presented in its complaint, or state a complete defense. (*Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33, 37 [105 Cal.Rptr.2d 525].) In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. (c); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) We accept as true the facts supported by Stoneridge's evidence and the reasonable inferences therefrom (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148 [65 Cal.Rptr.2d 112]), resolving evidentiary doubts or ambiguities in Stoneridge's favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

## II

### *Exemption for Licensed Real Estate Brokers*

Stoneridge argues the trial court erred by concluding the Stoneridge II loan was exempt from the constitutional usury prohibition pursuant to the terms of

the state Constitution and section 1916.1. It claims a question of fact exists on whether Marsh was acting as a third party intermediary or simply as the natural person through whom the lender acted. We disagree. Marsh was acting as a third party intermediary as a matter of law because he was not acting solely on his own behalf.

■ Article XV, section 1, of the California Constitution sets forth California's prohibition of usury. It limits the interest rate lenders can charge on nonpersonal loans to the higher of 10 percent or 5 percent plus the Federal Reserve Bank of San Francisco's rate on the 25th day of the month preceding the date the agreement was contracted. However, the limitation does not apply to, among others, "any loans, made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property . . . ." (Cal. Const., art. XV, § 1.) The Stoneridge II secured loan carries an interest rate in excess of the constitutional rate, and that rate can be enforced only if it qualifies for the licensed broker exemption.

■ Section 1916.1 implements the licensed broker exemption. It defines when a secured loan has been "arranged" by a licensed broker. Under its terms, a broker arranges a loan when the broker, among other ways, "acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another . . . ." (§ 1916.1.)

There is no dispute Marsh negotiated and arranged the Stoneridge II loan. Stoneridge admits Marsh negotiated the loan and was its primary contact with the lender. It also does not deny Marsh was directly responsible for structuring the loan and setting the key loan terms, including the base interest rate, additional interest, origination fee, release prices, loan maturity date, conditions of the guaranty, and extension options. He presented the loan to Weyerhaeuser for approval. He directed preparation of all of the loan documents and reviewed each. He also negotiated several modifications to the loan.

Stoneridge also admits Marsh acted for compensation and in expectation of compensation for his services on the loan.

Thus, the real dispute here is whether Marsh, as a matter of law, negotiated and arranged the Stoneridge II loan as a third party intermediary, or as the statute reads, "for another." Neither party has cited to us a published opinion, nor have we found one, analyzing whether a broker who negotiates the loan on behalf of the lender, and who is an officer and employee of an affiliate of the lender but not of the lender itself, negotiates the loan as a third party intermediary.

The undisputed facts show Marsh was negotiating and arranging the loan for another. He was negotiating on behalf of the lender, Housing Partners, and not merely for his own benefit. Housing Partners is a legal entity separate and distinct from Marsh and Marsh's employer, Weyerhaeuser. Although Housing Partners and Weyerhaeuser are affiliated, they are not one and the same. Stoneridge has not alleged they are alter egos of each other, nor can it. Housing Partners is a limited partnership. Its sole limited partner is CalPERS, which contributed 80 percent of the Stoneridge II loan funds. CalPERS and Weyerhaeuser are not alter egos. Weyerhaeuser's affiliation with Housing Partners did not prevent Marsh from acting as a third party intermediary in the transaction between Housing Partners and Stoneridge.

Stoneridge argues the holdings of *Winnett v. Roberts* (1986) 179 Cal.App.3d 909 [225 Cal.Rptr. 82] (*Winnett*), and *Green v. Future Two* (1986) 179 Cal.App.3d 738 [225 Cal.Rptr. 3] (*Green*), compel us to conclude that Marsh was not acting as a third party intermediary because he was an employee of Weyerhaeuser and he signed the loan documents on behalf of Housing Partners. We disagree; *Winnett* is distinguishable, and *Green* is not persuasive authority.

This court in *Winnett* determined a loan was not exempt from the usury prohibition where the only broker involved in the transaction was the borrower. (*Winnett, supra*, 179 Cal.App.3d at pp. 915, 919.) There, the broker was acting solely on his own behalf. He and his wife were the borrowers and signatories to a promissory note, and the broker borrowed the money to pay for personal expenses. (*Id.* at p. 915.) We concluded the exemption for "arranged" loans was not intended to apply to situations "where no third-party intermediary is involved in the loan transaction." (*Id.* at p. 920.) *Winnett* does not apply to the facts of this case.

*Green* concerned a loan made to a partnership, the general partner of which was a licensed broker. The broker had participated in the loan's negotiations, but the Second Appellate District ruled the loan was not exempt from the usury prohibition because the broker had acted on her own behalf. (*Green, supra*, 179 Cal.App.3d at pp. 741, 742–743.) The *Green* court reached its conclusion ipse dixit, without analyzing the broker's efforts on behalf of the partnership.

Two other appellate districts considered loans made to partnerships where the broker was also a partner, and reached the opposite conclusion from *Green*. We find the holdings of these cases, *Stickel v. Harris* (1987) 196 Cal.App.3d 575 [242 Cal.Rptr. 88] (*Stickel*), and *Park Terrace Limited v. Teasdale* (2002) 100 Cal.App.4th 802 [122 Cal.Rptr.2d 797] (*Park Terrace*), to be instructive.

In *Stickel,* the First Appellate District determined the exemption for loans negotiated by licensed real estate brokers applied to a loan made to a partnership and a joint venture even though a licensed broker who solicited and negotiated the loan was one of the partners. "It is undisputed that he was not soliciting the loan for himself, but as the intermediary for the partnership and the joint venture. [The partner] did not forfeit this status solely because he became a member of these entities." (*Stickel, supra,* 196 Cal.App.3d at p. 585, fn. omitted.) The broker "was not acting exclusively as a borrower; he was simultaneously acting as an agent soliciting the loan on behalf of others, conduct for which a license was required . . . ." (*Id.* at p. 587.)

Similarly, in *Park Terrace,* the Fourth Appellate District determined a licensed broker who was a general partner in five limited partnerships arranged loans to the partnerships, and thus the loans were exempt from the usury limitation. (*Park Terrace, supra,* 100 Cal.App.4th at p. 804.) "Acting as an intermediary, [the broker/partner] negotiated the loans for each partnership's benefit, not merely for his own. [Citations.]" (*Id.* at p. 807.)

Here, it is obvious Marsh was not negotiating the loan for his own personal benefit. Marsh was an officer and employee of the managing company of a limited liability company, which was the manager of another limited liability company, which was the general partner of the lender. Under the reasoning of *Stickel* and *Park Terrace,* it is of no moment that Marsh indirectly benefited from the transaction. As long as Marsh was not negotiating solely on his own behalf, he fits squarely within the statutory exemption of a licensed broker who negotiated and arranged a loan for another.

Stoneridge claims Marsh could not have been acting in his licensed capacity as a broker because he signed the loan agreement and did not provide Stoneridge with a mortgage loan disclosure statement under Business and Professions Code section 10240. These points do not change our decision.

Marsh could have signed the loan agreement in his capacity as the lender's agent, while at the same time operating as the licensed broker on the transaction. (See *Stickel, supra,* 196 Cal.App.3d at p. 585.)

Addressing the failure to provide the mortgage loan disclosure statement, Stoneridge has not cited any case, and we are aware of none, which holds a person acting as a broker is deemed as a matter of law not to be acting as a broker if he fails to provide a mortgage loan disclosure statement. Stoneridge also has not made us aware of any case or statute that requires an otherwise valid loan to be stripped of interest because the broker failed to provide a disclosure statement. To the contrary, the Legislature gave borrowers in that

situation a statutory right of action against the broker for damages or a refund of commissions. (Bus. & Prof. Code, § 10248.2, subd. (b).) Failing to provide a disclosure statement did not show Marsh acted outside his licensed capacity as a broker when he negotiated the Stoneridge II loan and does not affect the interest on the loan.

We conclude the trial court correctly determined that Marsh negotiated and arranged the Stoneridge II loan in his capacity as a licensed real estate broker, and that he did so "for another."

### III

*Disregarding Errors in Loan Agreement*

Paragraph 9.1 of the loan agreement, under the heading, "No Violation of Usury Laws," incorrectly stated the Stoneridge II loan was "made and/or arranged by WRI Investments . . . ." Paragraph 9.19 incorrectly stated "no broker other than [Housing Partners] has been involved in the negotiation of the Loan . . . ." Despite the undisputed evidence Marsh was the licensed broker who negotiated and arranged the loan, Stoneridge argues the trial court erred by not defaulting to the erroneous recitals in the loan agreement under the presumption of truth established by Evidence Code section 622. We disagree.

Evidence Code section 622 establishes a conclusive presumption of truth that applies to facts in a written agreement. However, "this rule does not apply to the recital of a consideration." (Evid. Code, § 622.)

The factual matters asserted in paragraphs 9.1 and 9.19 go to the issue of consideration, and are thus not conclusively presumed to be true. The rate of interest on the loan obviously is a consideration for the loan agreement. Paragraphs 9.1 and 9.19 concern interest because their assertions, if binding, would affect the rate of interest the lender could charge. That is the significance of paragraph 9.19's heading, "No Violation of Usury Laws."

Because the assertions are not presumed true, they become subject to the mistake doctrine of section 1640. That statute requires the court to disregard the contract's failure to express the parties' real intentions due to fraud, mistake, or accident. The trial court properly followed this directive in refusing to rely on the erroneous assertions contained in paragraphs 9.1 and 9.19.

Stoneridge argues there is no evidence of mutual mistake, yet Stoneridge admitted in response to requests for admission that WRI Investments did not

make or arrange the Stoneridge II loan. By that admission, Stoneridge acknowledged paragraph 9.1 was a false statement. Stoneridge also admitted in discovery that Marsh negotiated the loan. That response rendered false paragraph 9.19's statement that Housing Partners was the only broker that negotiated the loan.

Both parties signed the agreement, but these provisions do not comport with either party's intention or understanding of the transaction. The mistake was thus mutual, and the trial court did not abuse its discretion in giving regard to the parties' true intentions.

IV

*Admission of Evidence Explaining Mistake*

Stoneridge claims the trial court abused its discretion when the court over-ruled Stoneridge's objections to testimony by Marsh and by Weyerhaeuser's senior counsel explaining the errors in paragraphs 9.1 and 9.19. Stoneridge objected on the basis of lack of personal knowledge and speculation. Because Stoneridge admitted the mistakes occurred, their mere existence was disposi-tive on this issue. No explanation was needed as to why the mistakes were made. Nonetheless, the trial court admitted the testimony, and it did not abuse its discretion in doing so.

Stoneridge claims Marsh lacked personal knowledge that paragraphs 9.1 and 9.19 contained errors because the clauses were standard terms drafted by legal counsel and Marsh had been instructed not to negotiate them. However, Marsh had personal knowledge of the loan structure because he created it. He was competent to testify that the statements in paragraphs 9.1 and 9.19 were false.

Stoneridge also attacks a declaration by Michael Schumacher, Weyerhaeuser's senior counsel on the transaction, as lacking personal knowledge concerning why the mistakes occurred. Schumacher declared he has been the senior-most attorney in charge of hundreds of secured real estate loan transactions for Weyerhaeuser over the years. He supervises three or four other attorneys in his firm who work with him on Weyerhaeuser transactions. He supervised the loan documentation for the Stoneridge II loan, as well as for the Stoneridge I loan. Upon reviewing other unrelated loans made during the same time period, Schumacher noticed the same or similar errors in paragraphs 9.1 and 9.19 had occurred "in at least dozens of other loan transactions." Schumacher had sufficient personal knowledge to testify about the errors and the process from which the errors arose. The court did not abuse its discretion in admitting his testimony.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants. (Cal. Rules of Court, rule 8.276(a).)

Blease, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied August 31, 2007, and appellant's petition for review by the Supreme Court was denied November 14, 2007, S156257.