Filed 3/17/26  Rasooli v. K.A.R. Properties CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| MOKHIM RASOOLI | B330437 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. 21VECV01213) |
| K.A.R. PROPERTIES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia C. Keeny, Judge.  Affirmed.

Melvin Betnun, for Plaintiff and Appellant.

Hitchcock, Bowman & Schachter, Robert Schachter, for Defendant and Respondent.

K.A.R. Properties, Inc. DBPP (KAR) made two loans to Mokhim Rasooli, both secured by deeds of trust on Rasooli's real property. After several modifications, the principal due on the loans exceeded $1.6 million. Rasooli ultimately paid off the loans, along with substantial interest and penalties incurred due to his defaults.

Rasooli subsequently filed suit against KAR, asserting causes of action for breach of contract, fraud, wrongful foreclosure, declaratory relief, and injunctive relief; he sought damages in excess of $500,000. After a bench trial, the court issued a statement of decision finding that Rasooli failed to meet his burden of proof and was not a credible witness. It nevertheless entered a judgment of $4,200 in his favor, because it found he overpaid that amount in interest.

Rasooli now contends that the matter should be remanded to the trial court for further proceedings, including calculation and refund of interest he paid and possible award of treble damages because the loans were usurious, unconscionable, and violated Civil Code section 1916.5. We affirm the judgment.

## FACTUAL BACKGROUND

In or around 2016, Rasooli owned real property in Van Nuys on which he planned to build four houses. While the first house was under construction in 2016, nonparty Sam Modir arranged a loan for Rasooli through KAR. Rasooli testified that he borrowed the money "through" Modir, his "agent"; KAR principal Richard Herrera testified that Modir was a "broker." It is undisputed that Modir received a brokerage fee, though on appeal Rasooli "classifies this as a referral fee."

That loan, Loan No. 1, had an initial principal amount of $268,000 and an interest rate of 10 percent. Loan No. 1 was

2

secured by a first deed of trust on Rasooli's property. Rasooli signed the loan documents and the deed of trust. Evidence at trial showed that the deed of trust was for $450,000 rather than $268,000; Herrera testified this was an error, and documents showed it was later revised to the correct amount of $268,000 by a signed agreement of the parties. Rasooli asserted the deed of trust reflected a fraudulent loan, because he did not receive $450,000. Rasooli received approximately $200,000 in proceeds from Loan No. 1.

Rasooli obtained a second loan, Loan No. 2, from KAR in July 2017. Herrera testified that a broker arranged the loan. Loan No. 2 had an initial principal amount of $375,000, an interest rate of 10.5 percent, and a default interest rate of 15.5 percent. Loan No. 2 was secured by a deed of trust on Rasooli's property. Rasooli signed all the required documentation for Loan No. 2. He received approximately $270,000 in loan proceeds.

The parties modified the loans several times in 2017 and 2018. These modifications increased the principal amount of Loan No. 1 to $1,097,020 and the principal amount of Loan No. 2 to $575,000. At some point in 2018, KAR mistakenly billed Rasooli for, and he paid, an interest charge of $4,200. In February 2019, Rasooli signed an agreement acknowledging a total indebtedness of $1,672,020.

Rasooli subsequently defaulted on both loans, resulting in the accrual of interest and additional fees. The amount of interest due ranged from 20 to 22 percent, including the base rates as well as late charges. At some point in 2020, KAR attempted to foreclose on Rasooli's property and he declared bankruptcy. Two of the houses Rasooli constructed were sold

3

during the bankruptcy, and the proceeds of the sale were used to pay off both loans.  The loans were fully paid off in 2021.

## PROCEDURAL HISTORY

Rasooli filed a complaint against KAR on September 9, 2021.  In his first cause of action for breach of contract, Rasooli alleged that KAR breached a written agreement to "provide continued funding and construction services to complete projects for sale as promised."  In his second cause of action for fraud, Rasooli alleged that KAR "promised to modify property construction loan documents to accurately state agreements and finance charges and facilitate construction on Plaintiff's properties through completion and sale," and that he justifiably relied on these false promises "rather than making alternate funding arrangements."  In his third cause of action for wrongful foreclosure, Rasooli alleged that KAR wrongfully foreclosed on his property because he "did not owe any or all the amounts claimed to be in default."  In his fourth cause of action for declaratory relief, Rasooli requested a judicial determination of the validity of the foreclosure proceedings.  In his fifth cause of action for injunctive relief, he requested prevention of foreclosure.  Rasooli sought general and special damages in excess of $500,000, as well as attorney fees and costs.  KAR answered the complaint on January 12, 2022.

The matter proceeded to bench trial on February 22 and February 24, 2023.  Rasooli represented himself at trial.  He testified on his own behalf, called several witnesses, and introduced documentary exhibits.  Neither Rasooli nor any of his witnesses mentioned usury, unconscionability, or Civil Code section 1916.5.  The trial court denied KAR's motion for judgment pursuant to Code of Civil Procedure section 631.8, after which

4

KAR called Herrera as a witness and introduced numerous documentary exhibits. While Herrera was on the stand, the trial court asked him if the loans were usurious under the California Constitution. He and his counsel said the loans were exempt from the usury provision because they were "broker-arranged." Usury was not mentioned again.

At the close of evidence, the trial court took the matter under submission. It filed a tentative statement of decision on March 29, 2023. The tentative statement of decision summarized the evidence at length. It then concluded that Rasooli "failed to meet his burden to establish any of the elements" of the claims asserted in his complaint. The court found "Mr. Rasooli to not be a credible witness," and specifically found that he "testified falsely on numerous issues," including "not being able to read or understand English." It further found that Rasooli "agreed to borrow various sums of money from defendant K.A.R. to complete a large construction project of four homes. Despite agreeing to the amounts advanced and the terms, as well as many modifications, all in order to secure funds to complete the project, when the loans came due, Mr. Rasooli elected to blame the delays in construction on Mr. Herrera and K.A.R., or to try to disavow the signed agreements. His witnesses, while each credible in their own right, did not present evidence that supported plaintiff in any material respect." The court found Herrera "to be a credible witness and that he accurately accounted for all moneys loaned or advanced to third parties and repaid. The two mistakes he made he readily admitted—the recordation of an incorrect amount which was corrected in 2021 and overcharging one month's interest in his final accounting."

The court additionally made the following relevant factual findings: Rasooli agreed to borrow $268,000 and secured that sum by a deed of trust; Rasooli agreed to borrow $375,000 and secured that sum by a deed of trust; the loans were modified several times, increasing the principal on Loan No. 1 to $1,097,020 and the principal on Loan No. 2 to $575,000; in February 2019 Rasooli signed an agreement acknowledging indebtedness to KAR in the amount of $1,672,020; Rasooli defaulted on both loans, but paid them in full in 2021; Herrera admitted a calculation error entitling Rasooli to a refund of $4,200; Rasooli failed to prove that Herrera or KAR "made any misrepresentations about the loans, the loan modifications, or the minor work that KAR did on the project"; Rasooli failed to prove any breach of contract, "except for the miscalculation of $4200 in interest charges"; and KAR's foreclosure action was not undertaken in a wrongful manner or for wrongful purposes.

Regarding usury, the court noted that Rasooli testified that Modir "was a broker and arranged the loans," while Herrera testified that "these were 'broker arranged loans,' but provided no details." The court concluded it was "not entirely clear" from this evidence whether the loans were arranged by a licensed broker such that they were exempt from the usury law. It continued, however, that "[b]ecause plaintiff bore the burden of proof that the loans were usurious or fraudulent, the court finds that on this record, plaintiff has failed to prove that Mr. Mohdi [*sic*] was not a licensed real estate broker and that the loans were not exempt from the anti-usury laws."

Rasooli filed objections to the tentative statement of decision. They did not mention usury, unconscionability, or Civil Code section 1916.5. They also did not challenge the court's

6

factual findings. Instead, they requested "monetary compensation"; costs of suit, including reasonable attorney fees; statutory damages; "the return of all payments to Plaintiff permissible by law (e.g., Unlawful Business Practices in Violation of BP § 17200 ET SEQ. CC§1942.4)"; and "accumulated interests."

The trial court adopted the tentative statement of decision as its final order, overruling Rasooli's objections "on the grounds that they are not proper objections and the court has fully explained its reasoning and findings." It entered judgment in favor of Rasooli and against KAR in the amount of $4,200, plus costs of suit, on May 15, 2023.

Rasooli timely appealed.

## DISCUSSION

Rasooli contends that the loans he obtained from KAR "were usurious from the beginning," and "the terms and conditions of the modifications only made them more so. The evidence at trial does not support Respondent's claim that the loans were exempt due to being 'arranged' by a real estate broker. Even if an exemption were to apply, the terms and conditions of the loans were unconscionable." He further argues that KAR did not comply with the requirements of Civil Code section 1916.5 when it increased the interest rates on the loans. He contends that these "deficiencies in the loans prevent[ ] K.A.R. from collecting or receiving interest on these loans," and the "case must be remanded so the trial court can determine how much of the interest and other costs paid Respondent must be disgorged to Plaintiff."[1]

---

[1] He also argues, for the first time in his reply brief, that the trial court committed judicial misconduct by failing to properly

7

KAR responds that Rasooli forfeited these arguments by failing to raise them below. We agree. "It is a fundamental principle that an appellate court will generally not consider an issue presented for the first time on appeal that could have been but was not presented in the trial court." (*Miller v. Pacific Gas & Electric Co.* (2023) 97 Cal.App.5th 1161, 1170.) Here, Rasooli did not assert a cause of action for usury in his complaint, which frames the issues for trial. He did not mention usury, unconscionability, or Civil Code section 1916.5 at any point during the trial court proceedings. Even after the trial court sua sponte raised the issue of usury during trial, Rasooli took no steps to follow up on the issue, whether through witness examination, his rebuttal case, argument, or a request for leave to amend his complaint. Rasooli's self-representation during trial did not excuse him from his obligation to present relevant issues to the trial court. (See, e.g., *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543 ["Pro. per. litigants are held to the same standards as attorneys."].) Even if the arguments were preserved, however, we would conclude they lack merit.

Article XV, section 1 of the California Constitution prohibits usury. "It limits the interest rate lenders can charge on non-personal loans to the higher of 10 percent or five percent plus the Federal Reserve Bank of San Francisco's rate on the 25th day of the month preceding the date the agreement was contracted." (*Stoneridge Parkway Partners, LLC v. MW Housing Partners III,*

_____

examine his evidence and "ask necessary questions of the defendant(s)." "[P]oints raised for the first time in a reply brief will ordinarily not be considered" (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809), and Rasooli has offered no good cause to depart from that general rule here.

*L.P.* (2007) 153 Cal.App.4th 1373, 1379.)  "However, the
limitation does not apply to, among others, 'any loans, made or
arranged by any person licensed as a real estate broker by the
State of California and secured in whole or in part by liens on
real property. . . .'" (*Ibid.*, quoting Cal. Const., art XV, § 1; see
also Civ. Code, § 1916.1.)  Although Rasooli asserts that the
lender should bear the burden of proving that a loan is not
usurious, a "transaction is rebuttably presumed *not* to be
usurious." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798,
italics in original.)  "The borrower bears the burden of proving
the essential elements of a usurious transaction," which are "(1)
The transaction must be a loan or forbearance; (2) the interest to
be paid must exceed the statutory maximum; (3) the loan and
interest must be absolutely repayable by the borrower; and (4)
the lender must have a willful intent to enter into a usurious
transaction." (*Id.* at pp. 798-799.)

"[W]hether a transaction is usurious is generally a mixed
question of fact and law." (*Ghirardo v. Antonioli*, *supra*, 8
Cal.4th at p. 800.)  "'There are three steps involved in deciding a
mixed fact/law question.  The first step is the establishment of
basic, primary or historical facts.  The second is the selection of
the applicable law.  The third is the application of law to the
facts. All three trial court determinations are subject to appellate
review.  Questions of fact are reviewed by giving deference to the
trial court's decision.  Questions of law are reviewed under a
nondeferential standard, affording plenary review.  [Citation.]'"
(*Ibid.*)  If the application of the law to the facts is essentially
factual, we review the trial court's determination for substantial
evidence.  But if the question requires consideration of legal
concepts, or the exercise of judgment about legal principles, then

9

the question is one of law and is reviewed de novo.  (See *id.* at pp. 800-801.)  On appeal, the trial court's ruling is presumed correct, and the appellant bears the burden of showing, "on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

The trial court found that Rasooli did not carry his burden of showing that the loans were usurious or that Modir was not a broker.  Rasooli has not shown this conclusion was erroneous.  To the extent he attempts to do so, many of the citations in his brief are to documents not included in the record he provided to this court.  The appellant has the burden of providing an adequate record.  (*Jameson v. Desta, supra*, 5 Cal.5th at p. 609.)  "'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'"  (*Ibid.*; see also *Air Couriers International v. Employment Development Department* (2007) 150 Cal.App.4th 923, 928 ["We have no duty to search the record for evidence and may disregard any factual contention not supported by proper citations to the record."], Cal. Rules of Court, rule 8.204(C).)  Although he designated many of the trial exhibits for inclusion in the clerk's transcript (see Cal. Rules of Court, rule 8.122(a)(3)), the record does not reflect that Rasooli took the steps required under California Rules of Court, rules 8.224(a)(1) and (b)(2) to ensure the exhibits were transmitted to this court.  It also does not reflect filing of the "Appellant's Opening Appendix" he cites throughout his briefing.

On February 9, 2026, approximately two weeks before oral argument, well outside the timeframe contemplated by California Rules of Court, rule 8.224(a), and with no explanation for the delay, KAR filed an application pursuant to California Rules of

10

Court, rule 8.224(c) to transmit 86 trial exhibits totaling hundreds of pages to this court. After we denied the application, KAR filed an amended application to transmit the exhibits on February 13, 2026, attributing the delay to misplacement of the exhibits in the trial court and various filing difficulties. The Advisory Committee Comment to California Rules of Court, rule 8.224(c) indicates that the late transmittal mechanism is intended to "address[ ] the case in which a party's need to designate a certain exhibit does not arise until after the period specified in subdivision (a) has expired" and contemplates a "showing of good cause." Upon concluding those standards were not satisfied, we denied the amended application on February 19, 2026. We reiterate that it is appellant's burden, not respondent's, to ensure the record is adequate for our review and to demonstrate error by the trial court.

The limited trial testimony that Rasooli cites does not demonstrate error. That testimony shows that Modir "brought the loan to" KAR. Herrera discussed one of the modifications to Loan No. 1 with Rasooli and prepared the modification, and an ambiguous "we" prepared a second modification of Loan No. 1. This testimony touches on only some of the actions a broker may take to arrange a loan. (See *Gibbo v. Berger* (2004) 123 Cal.App.4th 396, 402.) Thus, even if Herrera prepared documentation, there are other tasks Modir could have performed as a broker. As KAR points out, "a more fully developed record could have been provided had the issue been controverted." It was not. The trial court had only testimony that Modir was a broker, and did not err in concluding that was insufficient to overcome the presumption that the loans were not usurious.

11

Rasooli's argument regarding Civil Code section 1916.5 suffers similar infirmities. That statute limits the ability of "a lender other than a supervised financial organization" to provide certain construction loans with variable interest rates unless certain requirements are met. (Civ. Code, § 1916.5, subds. (a), (b)(1), (b)(2).) Those requirements include "[t]he rate of interest shall not change more often than once during any semiannual period, and at least six months shall elapse between any two changes"; "[t]he rate of interest shall not change during the first semiannual period"; and the borrower must be provided with a notice in "at least 10-point boldface type" that "THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE." (*Id.*, subd. (a)(2), (4), (6).)

There was no evidence at trial that the loans were variable-rate loans, only that they were subject to increased rates and penalties upon default. Even if we assume Civil Code section 1916.5 applies, however, Rasooli's argument that "[t]he loan documents signed by Plaintiff do not contain the required language and otherwise violate the provisions of Section 1916.5" is not supported by proper citations to evidence in the record he provided. Rasooli accordingly cannot show error.

As to unconscionability, Rasooli argues that the "total cost of the loans Plaintiff obtained from Defendant" was unconscionable, because KAR received "a total of $2,489,619.53 in interest and principal payments on loans with principal amounts of $1,097,000 (1st) and $700,000 (2nd)." Aside from citations to *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 926, and a statement made by KAR's counsel during trial, this is the entirety of the unconscionability argument; the discussion abruptly ends midway through a sentence beginning, "These

12

were loans secure."  This underdeveloped argument does not demonstrate that the interest rates were unconscionable.

Interest rates are unconscionable where, "in light of the totality of a transaction's bargaining context," they "are so 'unreasonably and unexpectedly harsh' as to be 'unduly oppressive' or 'shock the conscience.'" (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 973.)  "Unconscionability is a flexible standard in which the court looks not only at the complained-of term but also at the process by which the contractual parties arrived at the agreement and the larger context surrounding the contract, including its 'commercial setting, purpose, and effect.'" (*Id.* at p. 976; see also *id.* at pp. 982-984.)  Rasooli's truncated argument addresses only the "total cost" of the loans, not the broader context in which they were negotiated, made, and paid. He has not pointed to evidence showing the requisite procedural unconscionability of oppression or surprise (*id.* at p. 982), and he cannot challenge the trial court's findings that his testimony about various aspects of the transactions was not credible.  (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 ["The fact finder's determination of the veracity of a witness is final."].)

## DISPOSITION

The judgment is affirmed.  KAR is entitled to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.


We concur:


MORI, J.                                              TAMZARIAN, J.


13